**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: FLUIDMASTER, INC., WATER | ) | Case No. 1:14-cv-05696 |
| CONNECTOR COMPONENTS PRODUCTS | ) | MDL No. 2575 |
| LIABILITY LITIGATION | ) | Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Fluidmaster's motion to dismiss [136]. For the reasons set forth below, Defendant's motion [136] is granted in part and denied in part.

## I. Background[1]

This multi-district litigation relates to an allegedly faulty plumbing product designed and manufactured by Defendant Fluidmaster, Inc., a California company. The part in question is a called a NO-BURST water supply line, which is a short (usually 12" or 20" in length), flexible hose used to connect water piping to plumbing fixtures (*e.g.*, toilets, faucets, etc.). Plaintiffs allege two faults in these NO-BURST water supply lines: (1) that poor material selection and a defective design cause many of the supply lines to burst, resulting in flooding, and (2) that a plastic coupling nut used on a particular type of water supply line (*i.e.*, a toilet connector) is uniformly defective in its design and labeling, causing the coupling nut to fracture, resulting in flooding. Plaintiffs in this MDL include (1) individuals who incurred damages from fractured water supply lines, (2) individuals who have these allegedly faulty products in their homes where the product has yet to fail, and (3) subrogated insurers who paid claims to individuals who suffered damage due to supply line failures.

To streamline the adjudication of the common-liability claims in this MDL proceeding, the Court accepted Plaintiffs' proposal to file a consolidated class action complaint combining

---

[1] The Court accepts as true the facts alleged in Plaintiffs' complaint and makes all reasonable inferences in their favor. See *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

the claims as presented in six pre-existing class action lawsuits that had been transferred to this Court as part of this multi-district litigation,[2] [see 124, at 2], which Plaintiffs then filed on July 27, 2015. [See 127.] To be clear, the consolidated complaint does not include (at least expressly) the subrogation plaintiffs or their claims.

## II.    Legal Standard

### A.    Rule 12(b)(1)

The standard that the Court applies to a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on the purpose of the motion. See *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009); *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc), overruled on other grounds by *Minn–Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction, the Court accepts all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. See *Apex Digital,* 572 F.3d at 443–44; *United Phosphorus*, 322 F.3d at 946. But "[w]here jurisdiction is in question, the party asserting a right to a federal forum has the burden of proof, regardless of who raised the jurisdictional challenge." *Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008); see also *Reed v. Illinois*, 2014 WL 917270, at *2 (N.D. Ill. Mar. 10, 2014).

### B.    Rule 12(b)(6)

In reviewing the sufficiency of a complaint, a district court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *Agnew v. Nat'l Collegiate*

---

[2] *Rensel v. Fluidmaster, Inc.*, No. 14-cv-0648 (C.D. Cal.); *Sullivan v. Fluidmaster, Inc.*, No. 14-cv-5696 (N.D. Ill.); *Hardwick v. Fluidmaster, Inc.*, 14-cv-0363 (D.N.H.); *Hungerman v. Fluidmaster, Inc.*, 14-cv-0994 (W.D. Pa.); *Wyble v. Fluidmaster, Inc.*, 14-cv-1826 (D. Ariz.); *Larson v. Fluidmaster, Inc.*, 14-cv-10222 (N.D. Ill.). Note that since Plaintiffs filed their consolidated class action complaint, the MDL panel has transferred additional cases to this Court for coordinated or consolidated pretrial proceedings. Additional cases are expected.

*Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). The Federal Rules of Civil Procedure require only that a complaint provide the defendant with "fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Supreme Court has described this notice-pleading standard as requiring a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). While factual allegations must be accepted as true, legal conclusions may not be considered. *Id.*

###   C.      Rule 12(f)

Under Federal Rule of Civil Procedure 12(f) "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored but may be used to expedite a case by "remov[ing] unnecessary clutter." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

##   III.     Analysis

###   A.      Plaintiff Smith and the California Subclass

In Plaintiffs' consolidated class action complaint, in addition to consolidating the claims of the 13 named Plaintiffs in the underlying class action cases (Rensel, Kirsch, Sullivan, Rhyne, Ellefson, Eisen, Elder, Naef, Hardwick, Hungerman, Sanborn, Wyble, and Larson), Plaintiffs also brought claims on behalf of a fourteenth individual, Kevin Smith, representing a putative subclass of California residents. [127, ¶¶ 88–95.] Defendant moved to strike any mention of Plaintiff Smith and the California subclass from the complaint, arguing that Plaintiffs failed to

follow the proper procedures for incorporating Mr. Smith and the subclass into this multi-district litigation.

During the parties' oral argument before the Court on December 1, 2015, Plaintiffs conceded that they did not comply with formal requirements for adding Plaintiff Smith into this case, and represented to the Court that they were in the process of determining the best methodology for doing so. Accordingly, the Court issued an order stating that, "as discussed on the record, in order to expedite the issues surrounding Plaintiffs' addition of named Plaintiff Kevin Smith into their First Consolidated Class Action Complaint [127], the Court hereby strikes any mention of Plaintiff Kevin Smith from that complaint without prejudice."[3] [201, at 1.]

But the Court did not rule on Defendant's related motion to strike any mention of the California subclass as well. That motion is denied.

In the consolidated class action complaint, Plaintiffs define their putative state subclasses as "individuals and entities residing in each of the states in which a named Plaintiff resides and each of the states where the laws are similar to each of the states in which a named Plaintiff resides." [127, ¶ 180.] Defendant argues that because none of the named Plaintiffs is a California resident, the California subclass is now without a representative. But this ignores the fact that Plaintiffs defined their putative subclasses broadly to include states other than those in which a named Plaintiff resides. Defendant makes no argument as to why the California subclass does not fit into this definition. And to the contrary, "courts have permitted named plaintiffs to represent class members from other states in which the representatives did not reside or make purchases." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D. Ill. 2009).

---

[3] Plaintiff Smith ultimately elected to file a federal lawsuit in Central District of California, and that case subsequently has been transferred to this Court for coordinated pretrial proceedings as part of this MDL. See *Smith v. Fluidmaster, Inc.*, Case 16-cv-0932 (N.D. Ill.) [33].

Perhaps the bigger question here is how a California subclass can be part of this MDL when there is no such putative class mentioned in any of the underlying complaints that compose this consolidated MDL proceeding. The answer to that question lies in the fact that the consolidated class action complaint here is a *superseding* complaint (as opposed to an *administrative* one). To explain further, as one court recently put it, "[l]ike snowflakes, no two MDLs are exactly alike and, no doubt, whether to require the filing of a consolidated complaint and, if so, whether to treat such a complaint as 'administrative' or 'superseding' will depend on the particulars of a given MDL. Thus, it is critical that the parties and the court make clear what species of pleadings are being used." *In re General Motors LLC Ignition Switch Litig.*, 2015 WL 3619584, at *8 (S.D.N.Y. June 10, 2015); see also *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 904 n.3 (2015) ("Parties may elect to file a 'master complaint' and a corresponding 'consolidated answer,' which supersede prior individual pleadings. In such a case, the transferee court may treat the master pleadings as merging the discrete actions for the duration of the MDL pretrial proceedings. No merger occurs, however, when 'the master complaint is not meant to be a pleading with legal effect but only an administrative summary of the claims brought by all the plaintiffs." (internal citations omitted)). As Judge Sutton explained:

> Because each transferred case [in an MDL] comes with its own pleadings, a multidistrict transfer threatens to submerge the transferee district court in paper. A common solution to this difficulty, one adopted in this case, is for the plaintiffs to assemble a "master complaint" that reflects all of their allegations. In many cases, the master complaint is not meant to be a pleading with legal effect but only an administrative summary of the claims brought by all the plaintiffs. When plaintiffs file a master complaint of this variety, each individual complaint retains its separate legal existence. *See, e.g.*, *In re Nuvaring Prods. Liab. Litig.*, 2009 WL 2425391, at *2 (E.D. Mo. Aug. 6, 2009) ("[T]he filing of the master consolidated complaint in this action was simply meant to be an administrative tool to place in one document all of the claims at issue in this litigation. Neither Plaintiffs * * * nor I * * * contemplated that Rule 12(b) motion practice would be pursued * * * against the master complaint."); *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 142 (E.D. La. 2002) ("[T]he master complaint [filed in this case] should not

be given the same effect as an ordinary complaint. Instead, it should be considered as only an administrative device to aid efficiency and economy.").

But, in other cases, the court and the parties go further. They treat the master complaint as an operative pleading that supersedes the individual complaints. The master complaint, not the individual complaints, is served on defendants. The master complaint is used to calculate deadlines for defendants to file their answers. And the master complaint is examined for its sufficiency when the defendants file a motion to dismiss. *See, e.g.*, *In re Katrina Canal Breaches Litig.*, 309 F. App'x 836, 838 (5th Cir. 2009) ("[The plaintiff's] individual complaint was superseded, and * * * any arguments or claims that appear in [the] individual complaint but not in the Master Complaint were waived."); *In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, No. MDL 2272, 2012 WL 3582708, at *4 (N.D. Ill. Aug. 16, 2012) ("MDL courts have entertained motions to dismiss 'master' or 'consolidated' complaints * * *."); *see generally* Diana E. Murphy, *Unified and Consolidated Complaints in Multidistrict Litigation*, 132 F.R.D. 597 (1991).

The use of one term to describe two different types of pleadings leads to confusion. Just so here. Plaintiffs often file something labeled a "master complaint" without saying whether they mean to file an operative pleading or an administrative summary, prompting satellite litigation about the status of the documents submitted to the court. *See, e.g.*, *Nuvaring*, 2009 WL 2425391, at *1–2; *Propulsid*, 208 F.R.D. at 140–42. To ward off confusion, lawyers might do well to make plain what they have in mind when they use the label "master complaint." One option is to use "administrative complaint" and "administrative answer" for legally inert summaries of pleadings, and to use "consolidated complaint" and "consolidated answer" for pleadings meant to have legal effect.

*In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 590–91 (6th Cir. 2013).

Here, whether it was expressly stated or not, the consolidated complaint is a superseding complaint with its own legal effect; merger has occurred. Evidence of this comes from the fact that the parties have now fully briefed Rule 12(b) motions to dismiss portions of the consolidated complaint without any objection as to the propriety of such motions (*i.e.*, Rule 12(b) motions are improper when dealing with an "administrative" consolidated complaint).

Shifting back to the question at hand, although the exercise of *consolidation* implies a gathering of *existing* claims, the fact that the consolidated complaint is not a perfect reflection of the underlying claims does not offend the consolidation process, nor does it unduly prejudice or

benefit any party to this litigation. The complained-of additions here (*i.e.*, the addition of one putative state subclass and, as discussed below, an expansion in the number of Plaintiffs raising claims brought under California consumer protection laws) are not bad-faith attempts to refocus the litigation or to otherwise avoid some necessary procedural framework as was the case with Plaintiffs' attempt to add Plaintiff Smith; they are minor reworkings of *existing* claims amongst *existing* parties that reflect the natural evolution of claims in an MDL proceeding, and allowing these changes will assist in the efficient litigation of this consolidated proceeding.

Thus, without prejudging the certifiability of Plaintiffs' putative California subclass (whether "headless" or not, as Defendant would say), the Court concludes that the inclusion of the California subclass is not a "redundant, immaterial, impertinent, or scandalous matter," and thus striking this subclass pursuant to Rule 12(f) is not appropriate at this time.[4]

### B.     CLRA Claim

Plaintiffs' first cause of action in their consolidated class action complaint alleges a violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, brought on behalf of the putative nationwide class and, alternatively, on behalf of the California subclass. First, Defendant argues that the CLRA claim brought on behalf of the California subclass should be dismissed because Plaintiff Smith failed to comply with the Act's notice provisions. Second, Defendant argues that the CLRA claim should be dismissed in its entirety because Plaintiffs lack statutory standing to bring such a claim as they are not "consumers" who "transacted" business with Fluidmaster. Third, Defendant argues that Plaintiffs' CLRA claim (and California Unfair Competition Law ("UCL") claim) should be

---

[4] This issue will become moot once Plaintiff Smith is formally added as a named Plaintiff in the consolidated class action complaint, which seems inevitable since he and his California subclass are now properly before this Court as part of this MDL. *Smith v. Fluidmaster, Inc.*, Case 16-cv-0932 (N.D. Ill.).

stricken as to all Plaintiffs except for Rensel and Kirsch because the remaining Plaintiffs did not raise these claims in their underlying complaints. The Court addresses each argument in turn.

### 1. Notice under the CLRA

Defendant argues that even if the Court does not strike the California subclass, it nonetheless should dismiss Plaintiffs' CLRA claim brought on behalf of that putative subclass because Plaintiff Smith failed to comply with the CLRA's notice procedures prior to raising this claim in the consolidated class action complaint.[5]

The CLRA—which makes unlawful various unfair methods of competition and unfair or deceptive acts or practices regarding the sale of goods to consumers—requires potential plaintiffs to provide notice to the offending party of a CLRA violation by certified or registered mail 30 days or more prior to commencing an action for damages. See Cal. Civ. Code §§ 1770(a), 1782(a). The notice requirement "exists in order to allow a defendant to avoid liability for damages if the defendant corrects the alleged wrongs within 30 days after notice, or indicates within that 30-day period that it will correct those wrongs within a reasonable time. *Morgan v. AT&T Wireless Servs.*, 99 Cal. Rptr. 3d 768, 789 (Cal. Ct. App. 2009).

The California Supreme Court has not interpreted the notice provision of the CLRA, or the question of whether failure to provide formal notice requires dismissal with prejudice.[6] For decades, the only California appellate case interpreting the provision was *Outboard Marine*

---

[5] Defendant's argument is limited to the CLRA claim brought on behalf of the putative California subclass, not on behalf of the putative nationwide class, for which Plaintiffs Rensel and Kirsch *did* provide adequate notice. [See 127, ¶ 206; 127-1.]

[6] "In the absence of guiding decisions by the state's highest court, [federal courts] consult and follow the decisions of intermediate [state] appellate courts unless there is a convincing reason to predict [that] the state's highest court would disagree." *ADT Sec. Servs., Inc. v. Lisle–Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012); see also *AAR Aircraft & Engine Group, Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001) ("Although persuasive, the [State] Appellate Court decisions do not bind us. When a state supreme court has not spoken on an issue, the decisions of the state's intermediate appellate courts are authoritative unless we have a compelling reason to doubt that they have stated the law correctly.").

*Corp. v. Sup. Ct.*, 124 Cal. Rptr. 852 (Cal. Ct. App. 1975), where the court concluded that the defendant had waived his right to formal notice by telling the plaintiff that it had interpreted a letter from the plaintiff as adequate notice under § 1782(a). *Outboard Marine*, 124 Cal. Rptr. at 859. But several federal district courts in California nonetheless concluded that "failure to give notice before seeking damages necessitates dismissal with prejudice, even if a plaintiff later gives notice and amends." *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 950 (S.D. Cal. 2007) (citing *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2007); *Von Grabe v. Sprint*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003)); see also *Knafer v. Pharmacare US, Inc.*, 2015 WL 6742201, at *11 (S.D. Cal. Nov. 4, 2015) ("For some time, federal courts in this district dismissed CLRA claims with prejudice when the plaintiff did not provide the required notice before filing the complaint."). These are the cases that Defendant relies upon in its motion to dismiss.

But the tide turned in 2009 when—nearly a quarter century after *Outboard Marine*—the California Court of Appeal addressed the issue head-on, holding that "[a] dismissal *with prejudice* of a damages claim filed without the requisite notice is not required to satisfy [the purpose of the notice requirement]. Instead, the claim must simply be dismissed until 30 days or more after the plaintiff complies with the notice requirements." *Morgan*, 99 Cal. Rptr. 3d at 789. In other words, failure to provide notice *is* grounds for dismissal, but such a failure is curable. See, *e.g.*, *Kanfer*, 2015 WL 6742201, at *11–12; *Herron v. Best Buy Stores, L.P.*, 2014 WL 465906, at *4–5 (E.D. Cal. Feb. 4, 2014); *Trabakoolas v. Watts Water Techs., Inc.*, 2012 WL 2792441, at *5–8 (N.D. Cal. 2012).

In its brief, Defendant attempted to sweep these on-point cases under the rug by ignoring them. At oral argument, Defendant tried to distinguish *Morgan* by noting that the plaintiffs only

sought *injunctive* relief under the CLRA in their original and first amended complaints (for which the CLRA does not require pre-suit notice), and that it wasn't until their second amended complaint that plaintiffs sought monetary damages on their CLRA claim. But the plaintiffs in *Morgan* did not provide formal notice until four months before filing their *third* amended complaint, making *Morgan* factually comparable to the situation here. In this case, Plaintiff Smith filed his CLRA claim seeking monetary damages, *then* he provided formal notice (on September 15, 2015 [see 148-1, ¶ 2]), and *then* he was dismissed from the case. Any re-insertion of Plaintiff Smith into the consolidated class action complaint (which inevitably would involve an amendment occurring more than 30 days after formal service), would satisfy the CLRA notice requirement as explained in *Morgan*.

For these reasons, the Court dismisses, *without prejudice*, Plaintiffs' CLRA claim brought on behalf of the putative California subclass.

### 2. Statutory Standing under the CLRA

The CLRA proscribes various unfair acts and practices "undertaken by any person in a *transaction* intended to result or which results in the sale or lease of goods or services to any *consumer*." Cal. Civ. Code § 1770(a) (emphasis added). Defendant argues that (1) Plaintiffs' CLRA claim should be dismissed because Plaintiffs never "transacted" business with Defendant as required by the statute and, alternatively, that (2) Plaintiffs' CLRA claim should be dismissed as to nine of the named Plaintiffs who do not qualify as "consumers" under the statute.[7]

---

[7] As a procedural matter, Defendant brings its motion both under Rule 12(b)(1) and 12(b)(6). But the "transaction" and "consumer" requirements relate to statutory standing, not Article III standing, and thus are properly considered under a Rule 12(b)(6) motion to dismiss. See *Kohen v. Pacific Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) ("[A]n issue of statutory standing * * * has nothing to do with whether there is case or controversy under Article III."); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n.4 (2014) ("[Statutory standing] does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." (citations omitted)).

Governing the Court's analysis is the CLRA's mandate that the statute "be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

With this in mind, there are essentially two separate issues here. First, whether Plaintiffs actually purchased Defendant's product (the "consumer" inquiry) and, if so, whether they purchased the product from the correct entity (the "transaction" inquiry).

### a.    Consumer

As to the "consumer" inquiry, Defendant argues that the CLRA claims of nine of the named Plaintiffs should be dismissed because those individuals did not purchase Defendant's product and thus are not consumers under the CLRA.[8] According to the statute, a "consumer" is "an individual who seeks or acquires, *by purchase or lease*, any goods or services for personal, family, or household purpose." Cal. Civ. Code § 1761(d) (emphasis added). Defendant relies on both the allegations in the complaint and the Plaintiffs' deposition testimony in arguing that these individuals either purchased a home in which the supply line was already installed or someone else (a plumber, friend, etc.) purchased the supply line for them, thus putting them outside of the scope of the statutory definition of consumer.

As an initial matter, the Court will not look to deposition testimony or other extrinsic evidence in considering whether Plaintiffs have pled statutory standing. Questions of statutory standing are reviewed under Rule 12(b)(6), not Rule 12(b)(1), and the Court's inquiry into statutory standing at the motion to dismiss stage is limited to the pleadings. *Wright v. Assoc. Ins.*

---

[8] Plaintiffs note that "no additional facts would show that Plaintiffs Hungerman and Sanborn are 'consumers' under the CLRA. Thus Plaintiffs will voluntarily dismiss Hungerman and Sanborn's CLRA claims." [148, 18 n.14.] Accordingly, the CLRA claims of Plaintiffs Hungerman and Sanborn are dismissed. The Court encourages Plaintiffs to continue to review the validity of their remaining claims as the facts of this case continue to develop.

*Comps. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (Court's review is limited to the pleadings on a Rule 12(b)(6) motion); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (noting that the general rule is that "when additional evidence is attached [to] a motion to dismiss, 'the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56 * * * or exclude the documents attached to the motion to dismiss and continue under Rule 12'" (citation omitted)).

Here, Defendant relies exclusively on the deposition transcripts of Plaintiffs Elder, Kirsch, Rhyne, Eisen, Hungerman, Sanborn, and Wyble in support of its argument that these individuals are not "consumers" under the CLRA. The Court will exclude Defendant's references to those Plaintiffs' depositions and consider Defendant's motion based solely on the allegations in the complaint. That leaves only Defendant's arguments relating to Plaintiffs Hardwick and Sullivan who, according to the complaint, purchased homes in which the allegedly faulty part was already installed. [127, ¶¶ 17, 57.]

Beginning with the plain language of the statute, in order to establish that one is a consumer, one must allege that he or she "acquire[d], by purchase or lease, any goods or services for personal, family, or household purpose." Cal. Civ. Code § 1761(d). According to the complaint, Plaintiff Hardwick "purchased a home in which a Fluidmaster NO-BURST Line was installed," and Plaintiff Sullivan "purchased a home in which a * * * Fluidmaster NO-BURST Line (B1F20) was installed." [127, ¶¶ 17, 57.] The complaint also says that Plaintiffs "are consumers who purchased Defendant's water supply lines for personal, family, or household purposes." [127, ¶ 197.] Thus, both individuals acquired their water supply lines in conjunction with purchasing their homes. These allegations satisfy the plain language of the statute.

Defendant relies primarily on *Schauer v. Mandarin Gems of California, Inc.*, 23 Cal. Rptr. 3d 233 (Cal. Ct. App. 2005), where the court held that the recipient of an engagement ring was not a consumer under the CLRA. *Schauer*, 23 Cal. Rptr. 3d at 241. The court concluded that because the "[p]laintiff's ownership of the ring was not acquired as a result of her own consumer transaction with defendant, and without an assignment of [the original purchaser's] rights, she [did] not fall within the parameters of consumer remedies under the [CLRA]." *Id.* Defendant likens Plaintiffs to the fiancée in *Schauer*, arguing that neither engaged (no pun intended) in a consumer transaction. The Court is not persuaded.

The court's conclusion in *Schauer* was a straightforward application of the plain language of the statute—because the plaintiff did not "purchase or lease" the engagement ring (*i.e.*, her fiancé purchased it and gifted it to her), she lacked statutory standing. Here, Plaintiffs Hardwick and Sullivan purchased their water supply lines in conjunction with purchasing their homes.[9] Granted, each purchase was part of a larger transaction, but ultimately Plaintiffs did acquire their water lines through a purchase, which both satisfies the plain language of the statute and distinguishes them from the plaintiff in *Schauer*. See, *e.g.*, *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1095 (N.D. Cal. 2006) (CLRA's requirement that the plaintiff "acquire" a product does not "require[] affirmative or conscious action, let alone a desire for the subject to be acquired").

Perhaps the bigger question is whether a *subsequent* purchaser of a product can be considered a consumer for purposes of establishing standing under the CLRA, or whether the claim lives and dies with the initial purchaser. For example, if the original ring purchaser in

---

[9] The complaint says only that Plaintiffs Hardwick and Sullivan purchased homes in which the Fluidmaster water supply lines were installed. The complaint does not shed any additional light on the chain of ownership preceding their respective purchases—a chain that could include suppliers, retailers, plumbers, and/or prior homeowners.

*Schauer* had sold that ring to his neighbor (instead of gifting it to his fiancée), would the neighbor be considered a consumer? And, relatedly, would the original purchaser then cease to be a consumer, or would both individuals retain consumer status under the statute? Neither the statute nor the cases cited by the parties address these questions. At a minimum, *Schauer* confirms that one can gain consumer status through assignment, which means that standing can extend beyond the initial purchaser, at least in certain instances. Ultimately, while the notion of allowing standing to pass from purchaser to purchaser may raise a yellow flag, the Court is satisfied—for pleading purposes and in light of the liberal construction mandated by the CLRA—that Plaintiffs Hardwick and Sullivan have sufficiently alleged that they acquired Defendant's product through a purchase, thereby putting them within the definition of "consumers" under the Act.

### b. Transaction

As to the "transaction" inquiry, Defendant argues that because Plaintiffs did not transact any business with Fluidmaster, their CLRA claims must be dismissed. [See, *e.g.*, 175, at 12 ("There are no allegations in the Consolidated Complaint that any of the Plaintiffs transacted business with Fluidmaster. Accordingly, lacking an essential element of their purported CLRA claim, these claims must be dismissed in their entirety.").] As a reminder, the CLRA proscribes certain acts and practices "undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). The CLRA defines a transaction as "an agreement between a consumer and another person." Cal. Civ. Code § 1761(e). For purposes of Defendant's motion to dismiss, the relevant question whether this "other person" must be Defendant.

According to the complaint, Plaintiffs purchased their supply lines from home improvement stores (Rensel, Rhyne), from a plumber (Wyble), or in conjunction with purchasing a home (Kirsch, Sullivan, Hardwick). For certain Plaintiffs (Ellefson, Eisen, Elder, Naef, Smith, Larson), the complaint says generally that they purchased a water supply line or had the water supply line installed in their home without providing any further details about the underlying transaction. Nonetheless, each Plaintiff alleged that he or she made an agreement with a "person"[10] (a plumber, a retailer, another homeowner, etc.) that resulted in the sale of goods (Defendant's water supply line) to a consumer (the Plaintiff). Arguably, then, Plaintiffs have satisfied the plain language of the statute, liberally construed.

Defendant relies heavily on *Green v. Canidae Corp.*, 2009 WL 9421226 (C.D. Cal. June 9, 2009), where the court held that the plaintiff, who purchased dog food from a specialty supplier, could not sue the dog food manufacturer because "[t]he CLRA does not provide a cause of action for consumers against the supplier of goods and services to a retailer from whom the consumer purchased." *Green*, 2009 WL 9421226, at *4. But a more-recent California case rejected the so-called direct-transaction requirement set forth in *Green*, criticizing that opinion as "cursory," "unpersuasive," and contrary to "the weight of the persuasive authority." *Philips v. Ford Motor Co.*, 2015 WL 4111448, at *15 (N.D. Cal. July 7, 2015). The *Philips* court emphasized the CLRA's command that the statute be interpreted liberally, noting that "[i]t comes as no surprise, then, that the vast majority of courts to address the issue have rejected [the direct-transaction] argument, holding instead that a plaintiff need not allege a direct transaction with the manufacturer" to state a CLRA claim. *Id.*; see also *Falco v. Nissan N. Am., Inc.*, 96 F. Supp. 3d 1053, 1062–63 (C.D. Cal. 2015) ("The Court concludes that a manufacturer that is not the direct

---

[10] The CLRA defines a "person" as "an individual, partnership, corporation, limited liability company, association, or other group, however organized. Cal. Civ. Code § 1761(c).

seller may be held liable for failure to disclose material defects under the CLRA and UCL * * *."); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1140 (N.D. Cal. 2010) ("[W]hen a plaintiff can demonstrate that the manufacturer had exclusive knowledge of a defect and the consumer relied upon that defect, the CLRA's protection extends to the manufacturer as well, regardless of whether the consumer dealt directly with the manufacturer."); *Keilholtz v. Superior Fireplace Co.*, 2009 WL 839076, at *3–4 (N.D. Cal. March 30, 2009) ("Defendants fail to cite any authority to support the proposition that a CLRA claim can be asserted only against defendants who sell goods or services directly to consumers."). The Court finds these cases persuasive, and rejects any bright-line assertion that all "transactions" must occur directly with a product's manufacturer in order to fall within the purview of the CLRA.

But while the Court confidently can reject Defendant's "direct-transaction" argument, there still remains a question regarding which *indirect* transactions are sufficient to establish statutory standing under the CLRA. Insight into this question can be gleaned from *Chamberlan v. Ford Motor Co.*, 2003 WL 25751413 (N.D. Cal. Aug. 6, 2003), where the court concluded that consumers who purchased vehicles from authorized dealerships had statutory standing to sue Ford Motor Company (the manufacturer) under the CLRA, relying on an loose theory of agency to bridge the gap between the manufacturer and the dealership. *Id.*; see also *Philips v. Ford Motor Co.*, 2015 WL 4111448, at *14 (N.D. Cal. July 7, 2015) (statutory standing where plaintiffs alleged that they purchased vehicles from an authorized Ford dealership).

Defendant interprets *Chamberlan* narrowly, arguing that it only extends statutory standing to instances where the transaction in question occurs with an *authorized* agent, and there is no allegation that retailers and plumbing companies are authorized agents of Fluidmaster. In other words, under Defendant's reading of the statute, only the direct purchasers of

Fluidmaster's products (*e.g.*, retailers, plumbing supply companies, etc.), *not* individual consumers, would have standing to sue Defendant under the CLRA.

The Court is not convinced. Despite the fact that *Chamberlan* involved a transaction with the manufacturer's authorized dealership, the court clearly stated that the relevant inquiry is whether the manufacturer intended its products to be sold at the consumer level. *Chamberlan*, 2003 WL 25751413, at *8 ("Among the sales of goods to consumers, that resulted from the transactions in which Defendant engaged, were the subsequent resales of Subject Automobiles to Plaintiffs."). As the *Chamberlan* court put it, "the [California] legislature expanded the range of illegal acts and practices to include those 'undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer.' Nothing in the language of the CLRA states that only a defendant who directly engaged in a completed transaction with a plaintiff may be liable to that plaintiff." *Id.* at *7.

Perhaps the strongest language on the issue comes from *Rossi v. Whirlpool Corp.*, 2013 WL 5781673 (E.D. Cal. 2013), where the court went beyond the plain language of the statute in holding that "where a manufacturer ha[s] exclusive knowledge of a defect and the consumer relied upon that defect, the CLRA's protection extends to the manufacturer as well, regardless of whether the consumer dealt directly with the manufacturer." *Rossi*, 2013 WL 5781673, at *10 (citing *Tietsworth*, 720 F. Supp. 2d at 1140; *Chamberlan*, 369 F. Supp. 2d at 1144). While this rule arguably runs afoul of the statutory text—*i.e.*, it conflates the manufacturers initial "transaction" of putting a product into the stream of commerce with the consumer's "transaction" of purchasing the product from some downstream seller—it does keep with the statute's demand for liberal construction and its goals of "protect[ing] consumers against unfair and deceptive business practices and [providing] efficient and economical procedures to secure

such protection." Cal. Civ. Code § 1760. That is, for items like water supply lines that are not sold directly to consumers, the consumers have no recourse against the deceptive business practice absent some concession for downstream-purchaser standing, and relying on retailers and plumbers to sue is not a viable option considering that homeowners are the ones incurring the damage. Thus, there are efficiency gains to be had by allowing homeowners to jump the queue and sue the manufacturer directly, rather than involving a slew of potentially disinterested middlemen.

Here, despite conceding that they did not purchase their water supply lines directly from Defendant Fluidmaster (which does not sell directly to consumers anyway), Plaintiffs *do* allege that they purchased Defendant's products from a "person," and that Defendant "possessed exclusive knowledge of the defects and quality control issues" that rendered the supply lines faulty, but nonetheless distributed their products with the intention that they would be sold to consumers. [127, ¶¶ 196–203, 269–70.] Defendant has not cited any authority where a similar claim was dismissed at the pleading stage. While Plaintiffs will need to prove much more than this to succeed on their CLRA claim, Defendant has not convinced the Court that dismissal is appropriate at this time. Defendant's motion to dismiss Plaintiffs' CLRA claim is denied.

### 3. CLRA and UCL Claims by Plaintiffs other than Kirsch and Rensel

Defendant moves under Rule 12(f) to strike from Plaintiffs' consolidated complaint all references to the CLRA and California's Unfair Competition Law ("UCL") brought by named Plaintiffs other than Rensel and Kirsch (specifically, [127, ¶¶ 196, 211–12]), arguing that the other Plaintiffs did not include such claims in their pre-MDL complaints, thus making it inappropriate to include such claims in the consolidated class action complaint. Defendant's motion is denied.

Plaintiffs bring Counts One (CLRA) and Two (UCL) on behalf of (1) a nationwide class and, alternatively, (2) a California subclass. Plaintiffs Rensel and Kirsch are the only Plaintiffs who raised CLRA and UCL claims in their underlying complaint. In other words, if Plaintiffs' consolidated complaint were a fully accurate reflection of the claims in the underlying complaints, the CLRA and UCL claims would still be present, but only Plaintiffs Rensel and Kirsch would bring those claims on behalf of the putative nationwide class.

As explained above, Plaintiffs' consolidated complaint supersedes the underlying complaints for purposes of this MDL. Plaintiffs' discretion in adjusting pre-existing claims in formulating its "consolidated" complaint is not as restricted as Defendant insists, especially considering that these minor changes do not alter the scope of the issues to be decided in this MDL proceeding or unduly benefit or prejudice any parties. Had Plaintiffs wished to add an entirely new claim, such an addition would require leave of Court under Federal Rule of Civil Procedure 15(a). But for efficiency reasons, the Court concludes that such formal procedures are not necessary here, and Defendant's motion to strike is therefore denied.[11]

## C. Injunctive Relief

Defendant has also moved under Rule 12(b)(1) to dismiss all of Plaintiffs' claims for injunctive relief, arguing that Plaintiffs have not pled (nor could they plead, based on facts alleged in the complaint and in Plaintiffs' depositions) any threat of injury sufficient to establish Article III standing for such claims. A plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). To establish standing, a plaintiff must show that he or she suffered an injury in fact, that the injury is

---

[11] As a technical matter, if the Court ultimately determines that there are issues of fact regarding Defendant's liability on Plaintiffs' CLRA and UCL claims and thus remands these claims to their transferor courts, all Plaintiffs other than Rensel and Kirsch will need to amend their underlying complaints to comport with the claims as they were presented in the superseding consolidated complaint.

traceable to the defendant's conduct, and that the injury is likely to be redressed by a favorable decision in the plaintiff's lawsuit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Regarding claims for prospective injunctive relief, plaintiffs must allege a threat of future injury that must be "actual and imminent, not conjectural or hypothetical." *Summers*, 555 U.S. at 493. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief * * * if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Defendant objects to the following six requests for injunctive relief in Plaintiffs' consolidated class action complaint:

1. A general statement at the outset of Plaintiffs' consolidated complaint that "Plaintiffs also seek injunctive relief requiring Fluidmaster to modify its unfair and fraudulent practices so as to uniformly provide relief in accordance with its obligations under the law." [127, ¶ 12.]

2. As part of Plaintiffs' first cause of action under the CLRA, Plaintiffs request, "[p]ursuant to Cal. Civ. Code § 1780(a)(2), (3), and (5), * * * an order for declaratory, equitable and/or injunctive relief prohibiting Fluidmaster from continuing to engage in the methods, acts, or practices alleged herein." Plaintiffs also request "an order requiring Fluidmaster to notify consumers who paid for the defective water supply lines that Fluidmaster has remediated and changed the design because of the latent defects." [127, ¶ 208.]

3. As part of Plaintiffs' second cause of action under the California UCL, Plaintiffs request "declaratory, equitable, and/or injunctive relief requiring Fluidmaster to stop their unlawful, deceptive, and unfair conduct, prohibiting Fluidmaster from continuing to sell the defective water supply lines; requiring notice to the public at-large of the design defects associated with these water supply lines and of the availability of a remediated product, and all other relief the Court deems just and equitable." [127, ¶ 222.]

4. As part of Plaintiffs' fifteenth cause of action under the Illinois Uniform Deceptive Trade Practices Act, "Plaintiff Sullivan and the Illinois Subclass members seek injunctive relief against Defendant Fluidmaster based upon the vast market share which Fluidmaster claims to have for replacement plumbing parts and the extremely high likelihood that the Plaintiff Sullivan and the Illinois Subclass members may personally suffer future harm to their real and personal

property from the failure of Fluidmaster water supply lines in their homes, business, and rental properties." [127, ¶ 386.]

5. As part of Plaintiffs' sixteenth cause of action under the Georgia Uniform Deceptive Trade Practices Act, "Plaintiff Eisen and the Georgia Subclass members * * * seek appropriate injunctive relief to remedy [Defendant's] misconduct, along with other remedies or damages available under O.C.G.A. § 10-1-371, *et seq.*" [127, ¶ 391.]

6. As part of Plaintiffs' seventeenth cause of action under the Alabama Extended Manufacturer's Liability Doctrine, "Plaintiff Naef and the Alabama Subclass members * * * seek appropriate injunctive relief to remedy [Defendant's] misconduct, along with all other remedies or damages available." [127, ¶ 403.]

The Court will address each request in turn.

### 1. Plaintiffs' General Request That Defendant Modify Its Practices

At the outset of the consolidated complaint, Plaintiffs provide an overview of their various claims, wherein they state their request for "injunctive relief requiring Fluidmaster to modify its unfair and fraudulent practices so as to uniformly provide relief in accordance with its obligations under the law." [127, ¶ 12.] Because this statement is part of the introduction to the complaint and not a part of any of the 19 causes of action, the Court does not interpret it as a separate claim for relief. Defendant's request to dismiss this "claim" is denied as moot.

### 2. Injunctive Relief Under the CLRA

Under the CLRA, any consumer who suffers damage as a result of a violation of that Act can sue to obtain, among other things, "[a]n order enjoining the methods, acts, or practices" in question. Cal. Civ. Code § 1780(a)(2). From a statutory standing perspective, one need only "suffer[] any damage" in order to bring a claim for prospective injunctive relief. But Defendant argues that because Plaintiffs have already replaced their allegedly faulty water supply lines and because they have not alleged any desire to purchase Defendant's products again in the future, Plaintiffs have not pled a sufficient likelihood of future harm to justify Article III standing for the requested injunctive relief.

There is a split among district courts as to whether plaintiffs can pursue injunctive relief on consumer protection claims where the plaintiffs face no threat of future harm (*e.g.*, where the consumer is already aware of the allegedly deceptive advertising, where the consumer has already replaced the allegedly faulty product, etc.). Compare *Koehler v. Litehouse, Inc.*, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2013) ("If the Court were to construe Article III standing as narrowly as Defendant Advocates, federal courts would be precluded from enjoining false advertising under California consumer laws * * *." (quoting *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *7–8 (C.D. Cal. Apr. 11, 2011))), with *Mason v. Nature's Innovation, Inc.*, 2013 WL 1969957, at *5 (S.D. Cal. May 13, 2013) (dismissing injunctive claim because it was "apparent that Plaintiff ha[d] no intention of buying Defendant's * * * product again in the future"). Other courts have debated whether plaintiffs raising consumer protection claims even need to establish Article III standing for each remedy alleged. Compare *Kanfer v. Pharmacare US, Inc.*, --- F.Supp.3d ---, 2015 WL 6742201, at *13 (S.D. Cal. Nov. 4, 2015) ("Injunctive relief is a remedy, not a cause of action subject to a motion to dismiss."), with *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 192 n.10 (D.D.C. 2013) ("[S]tanding is a jurisdictional requirement demanded by Article III, which plainly trumps the will of a state legislature that consumers have injunctive remedies in federal court for false or misleading representations.").

The Court agrees with the *Mason* and *Richardson* cases, which say that plaintiffs in federal court must establish Article III standing in order to pursue injunctive relief, regardless of whether the plaintiffs are raising consumer protection claims. But to be clear, as Judge Bates noted in *Richardson*, "finding that plaintiffs who will never purchase the product in the future do not have standing to obtain injunctive relief [does] not thwart consumer fraud statutes" because plaintiffs may be able to bring such claims in state court, and there are also various state and

federal regulatory agencies that can be solicited to take action on consumers' behalf to police such wrongdoings. *Richardson*, 991 F. Supp. 2d at 192 n.10 (citing *Bohn v. Boiron, Inc.*, 2013 WL 3975126, at *4 (N.D. Ill. Aug. 1, 2013); *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001–02 (9th Cir. 2001)).

Here, several named Plaintiffs allege a threat of future injury. [See 127, § 333 ("Plaintiffs Rensel and Wyble and the Arizona Subclass members * * * paid for water supply lines that pose an immediate safety risk and will have to be repaired or replaced); *id.* § 363 ("Plaintiff Sullivan and the Illinois Subclass members * * * paid for water supply lines that pose immediate safety risks and will have to be repaired or replaced); *id.* § 386 (referencing the "extremely high likelihood" that "Plaintiff Sullivan and the Illinois Subclass members * * * may personally suffer future harm"); *id.* § 423 ("Plaintiff Hardwick and the New Hampshire Subclass members * * * paid for water supply lines that pose an immediate safety risk and will have to be repaired or replaced.").] In addition, Plaintiff Larson alleges that he has two Fluidmaster water supply lines installed in his home and that those supply lines suffer from inherent defects (*i.e.*, a threat of future harm from product failure). [127, ¶ 87.]

Generally speaking, "even a small probability of injury is sufficient to create a case or controversy." *Vill. of Elk Grove Vill. v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993). And here, Defendant acknowledges Plaintiffs' allegations of future harm in their consolidated complaint. But Defendant points to Plaintiffs' deposition transcripts as evidence that all Plaintiffs (except Larson) already replaced their allegedly faulty water lines, thereby nullifying Plaintiffs' allegations that they face any threats of future harm. Because Article III standing is a jurisdictional issue, the Court is entitled to look beyond the four corners of the complaint to assess the issue. See, *e.g.*, *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999)

("[W]here standing is challenged as a factual matter, the plaintiff bears the burden of supporting the allegations necessary for standing with 'competent proof.'").

Plaintiffs do not dispute that they all (except for Plaintiff Larson) have mitigated their damages by replacing the allegedly faulty water lines, but instead argue that "the vast majority" of the class members "presumably do not know that their Fluidmaster NO-BURST lines and toilet connectors are defective." [148, at 26.] However, Plaintiffs in a class action cannot rely on unnamed plaintiffs to satisfy Article III's standing requirement. See *Gratz v. Bollinger*, 539 U.S. 244, 289 (2003) ("[N]amed plaintiffs who represent a class 'must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and purport to represent.'" (citations omitted)); *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("Standing cannot be acquired through the backdoor of a class action." (citing *Allee v. Medrano*, 416 U.S. 802, 828–29 (1974) (Burger, C.J., dissenting))).

Plaintiffs also point to Plaintiff Larson, who has not mitigated his potential damages (*i.e.*, he still has the allegedly faulty water lines installed in his home), and argue that "[i]n a class action, standing is satisfied if at least one of the named plaintiff[s] meets the requirements." [148, at 24 n.15 (quoting *Ries v. Az. Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012)]; see also *Kohen v. Pacific Inv. Mgmt. Co. LLC*, 571 F.3d 672, 676–77 (7th Cir. 2009) (noting that it is sufficient in a class action to have only "one named plaintiff with standing, [because] one is all that is necessary"). But even if Plaintiff Larson has alleged a sufficient threat of future harm (*i.e.*, the potential rupture of his water supply lines),[12] that allegation would only be sufficient to

---

[12] The Court offers no opinion at this time as to whether Plaintiff Larson's alleged future harm is "certainly impending," as would be necessary to establish Article III standing. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) ("[A]llegations of possible future injury are not sufficient."); see also *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 692–94 (7th Cir. 2015).

establish Article III standing for prospective injunctive relief if "the relief sought would, if granted, reduce the probability" of that alleged future harm. *Vill. of Elk Grove Vill.*, 997 F.2d at 329. Here, there is a disconnect between the alleged harm and the requested relief. Specifically, Plaintiffs request an order "prohibiting Fluidmaster from continuing to engage in the methods, acts, or practices alleged herein," and an order "requiring Fluidmaster to notify consumers who paid for the defective water supply lines that Fluidmaster has remediated and changed the design because of the latent defects." [127, ¶ 208.] Neither of these injunctive measures, if granted, would change the fact that Plaintiff Larson has allegedly faulty water supply lines in his home. That is, even if the Court were to grant the requested relief, this would not reduce the probability of Plaintiff Larson's alleged future harm. Defendant's request to dismiss Plaintiffs' claim for injunctive relief related to their CLRA claim is therefore granted, and the claim is dismissed without prejudice.

### 3. Injunctive Relief Under the UCL

As part of Plaintiffs' second cause of action under the California UCL, Plaintiffs request "declaratory, equitable, and/or injunctive relief requiring Fluidmaster to stop their unlawful, deceptive, and unfair conduct, prohibiting Fluidmaster from continuing to sell the defective water supply lines; requiring notice to the public at-large of the design defects associated with these water supply lines and of the availability of a remediated product, and all other relief the Court deems just and equitable." [127, ¶ 222.]

For the same reasons discussed above in relation to Plaintiffs' request for injunctive relief under their CLRA claim, Plaintiffs (including Plaintiff Larson) have failed to allege a threat of future harm that could be remedied by the requested relief. Thus, Defendant's request to dismiss this claim is granted, and the claim is dismissed without prejudice.

### 4. Injunctive Relief Under the IUDTPA

As part of Plaintiffs' fifteenth cause of action under the Illinois Uniform Deceptive Trade Practices Act (which allows private suits for injunctive relief), "Plaintiff Sullivan and the Illinois Subclass members seek injunctive relief against Defendant Fluidmaster based upon the vast market share which Fluidmaster claims to have for replacement plumbing parts and the extremely high likelihood that the Plaintiff Sullivan and the Illinois Subclass members may personally suffer future harm to their real and personal property from the failure of Fluidmaster water supply lines in their homes, business, and rental properties." [127, ¶ 386.] Plaintiff Sullivan does not dispute that he has replaced the allegedly faulty water lines in his home, and he offers no other explanation of why he faces an "extremely high likelihood" of future harm. At this time, Sullivan's allegation of future harm is both conclusory and implausible. Moreover, absent any credible allegation of a threat of future harm, the Court is unable to determine whether the requested relief would remedy Plaintiff Sullivan's complaint. For these reasons, Defendant's request to dismiss this claim is granted, and the claim is dismissed without prejudice.

### 5. Injunctive Relief Under GUDTPA

As part of Plaintiffs' sixteenth cause of action under the Georgia Uniform Deceptive Trade Practices Act, "Plaintiff Eisen and the Georgia Subclass members * * * seek appropriate injunctive relief to remedy [Defendant's] misconduct, along with other remedies or damages available under O.C.G.A. § 10-1-371, *et seq.*" [127, ¶ 391.] Plaintiff Eisen does not allege any threat of future harm, plausible or otherwise, and thus lacks Article III standing to pursue a claim for injunctive relief. Defendant's request to dismiss this claim is granted, and the claim is dismissed without prejudice.

### 6.     Injunctive Relief Under AEMLD

As part of Plaintiffs' seventeenth cause of action under the Alabama Extended Manufacturer's Liability Doctrine, "Plaintiff Naef and the Alabama Subclass members * * * seek appropriate injunctive relief to remedy [Defendant's] misconduct, along with all other remedies or damages available." [127, ¶ 403.] Plaintiff Naef does not allege any threat of future harm, plausible or otherwise, and thus lacks Article III standing to pursue a claim for injunctive relief. Defendant's request to dismiss this claim is granted, and the claim is dismissed without prejudice.

### D.     Arizona Consumer Fraud Act

Defendant moves to dismiss Plaintiffs' twelfth claim—brought by Plaintiffs Rensel and Wyble on behalf of the Arizona subclass—arguing that there was no sale or transaction between Fluidmaster and Rensel or Wyble. The ACFA proscribes certain acts or practices made by any person "in connection with the sale or advertisement of any merchandise." Ariz. Rev. Stat. Ann. § 44-1522. Plaintiff Rensel purchased his water supply line from a home improvement store, and Plaintiff Wyble purchased his as part of a service performed by a plumber. [127, ¶¶ 14, 81.]

Defendant relies on *Sullivan v. Pulte Home Corp.*, 290 P.3d 446 (Ariz. Ct. App. 2013), where the court held that a subsequent purchaser of a home could not sue the builder under the ACFA because there was no sale or transaction between the two. *Sullivan*, 290 P.3d at 454, vacated in part on other grounds, *Sullivan v. Pulte Home Corp.*, 306 P.3d 1 (Ariz. 2013). But that case is not directly on point here. In *Sullivan*, there was a clearly definable transaction that could give rise to a claim under the ACFA: *i.e.*, the home builder's sale of the home to the original home buyer. But that sale was a simple, two-step transaction. Here, the chain of sale is more complex, where the manufacturer uses various intermediaries (*e.g.*, home improvement stores,

plumbers, etc.) to get the product to its final destination (*i.e.*, consumers). Now, if Plaintiffs Rensel and Wyble had sold their homes (with Defendant's products inside), according to *Sullivan*, those subsequent homeowners would not have a cause of action against Fluidmaster under the ACFA.[13] But the Court is not convinced that *Sullivan* should be read so broadly as to exclude indirect purchasers such as Plaintiffs Rensel and Wyble from stating a claim against a manufacturer. See, *e.g.*, Ariz. Rev. Stat. Ann. § 44-1521.6 (defining "person" to include agents and salesmen). While home improvement stores and plumbing companies are not Fluidmaster's express agents (as an authorized auto dealership is to a car manufacturer), they are the necessary links in the chain between the manufacturer and the consumer, especially here where the manufacturer does not sell directly to consumers.

Absent any on-point authority, the Court is not inclined to dismiss Plaintiffs' claim under the ACFA. Defendant's motion to dismiss this claim is therefore denied.

### E.     Illinois Uniform Deceptive Trade Practices Act

Defendant argues that Plaintiffs' fifteenth claim, brought by Plaintiff Sullivan on behalf of the Illinois subclass, should be dismissed because Sullivan has not alleged that he is likely to be damaged in the future, as required by the IUDTPA. The Court already dismissed (without prejudice) Plaintiffs' claim for injunctive relief under the IUDTPA pursuant to Rule 12(b)(1), and since the IUDTPA only allows individuals to sue for injunctive relief, any further analysis of

---

[13] This outcome, while seemingly different from the fate of Plaintiffs' claims under the CLRA, stems from the difference in purpose of those two consumer protection statutes. Specifically, the CLRA includes a mandate stating that the provision is to be interpreted liberally in favor of consumers. Cal. Civ. Code § 1760. The ACFA, on the other hand, is meant "to provide injured consumers with a remedy to counteract the disproportionate bargaining power often present in consumer transactions." *Waste Mfg. & Leasing Corp. v. Hambicki*, 900 P.2d 1220, 1224 (Ariz. App. Ct. 1995); *Dunlap v. Jimmy GMC of Tucson, Inc.*, 666 P.2d 83, 89 (Ariz. App. Ct. 1983). The Arizona legislature's focus on the imbalance of power in consumer transactions distinguishes the ACFA and the CLRA.

statutory standing under Rule 12(b)(6) is not necessary. However, for the sake of completion, the Court will address the parties' arguments.

The IUDTPA only allows consumers to sue for injunctive relief, and to state a claim under that Act, plaintiffs must allege a likelihood of future harm—*i.e.*, the Act applies only to persons "likely to be damaged by a deceptive trade practice of another." 815 ILCS 510/3; *Brennan v. AT&T Corp.*, 2006 WL 306755, at *4 (S.D. Ill. Feb. 8, 2006) ("Injunctive relief is obtainable by an individual consumer where that consumer can allege facts that he likely would be damaged by the defendant's conduct in the future."); *Howard v. Chi. Transit Auth.*, 931 N.E.2d 292, 298–99 (Ill. App. Ct. 2010) (affirming dismissal of IUDTPA claim where plaintiff could not demonstrate that he would likely be damaged by the defendant's practices in the future).

Plaintiffs do not dispute their need to plead a likelihood of future harm. Instead, they argue that they accomplished that feat by raising their claim "based upon the vast market share which Fluidmaster claims to have for replacement plumbing [parts] and the extremely high likelihood that Plaintiff Sullivan and the Illinois Subclass members may personal suffer future harm." [148, at 29.] Plaintiffs' argument is not persuasive. The requirements for stating a claim under the IUDTPA are clear: Plaintiff Sullivan must allege facts that he is likely to sustain damage in the future based on Defendant's conduct. Plaintiff has failed to do so. Accordingly, Plaintiffs' IUDTPA claim is dismissed without prejudice on this ground as well.

## F.    Georgia Unfair and Deceptive Trade Practices Act

Defendant also seeks dismissal under Rule 12(b)(6) of Plaintiffs' sixteenth cause of action under the GUDTPA, brought by Plaintiff Eisen on behalf of the Georgia subclass, on the grounds that Plaintiff Eisen has not alleged a harm that is likely to cause him damage in the

future. This is another instance where the Court already dismissed pursuant to Rule 12(b)(1) Plaintiffs' claim for injunctive relief under the GUDTPA, and because the GUDTPA only allows claims for injunctive relief, see *Iler Grp., Inc. v. Discrete Wireless, Inc.*, 90 F. Supp. 3d 1329, 1342 (N.D. Ga. 2015), further analysis under Rule 12(b)(6) is not necessary. But again, for the sake of completion, the Court will address the parties' arguments.

The GUDTPA only allows a cause of action for those "likely to be damaged by a deceptive trade practice." *Tri-State Consumer Ins. Co. v. LexisNexis Risk Solutions Inc.*, 823 F. Supp. 2d 1306, 1326 (N.D. Ga. 2011) (quoting Ga. Code Ann. § 10-1-373(a)); see also *Silverstein v. Procter & Gamble Mfg. Co.*, 2008 WL 4889677, at *4 (S.D. Ga. Nov. 12, 2008) ("A plaintiff who demonstrates past harm, but does not allege ongoing or future harm, has not shown that he is likely to be damaged."); *Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp. 2d 1340, 1364 (N.D. Ga. 2012) (a plaintiff must show that he or she is "likely to be damaged in the future" to have standing to seek injunctive relief under the GUDTPA).

Here, Plaintiff Eisen alleges only past harm. [127, ¶ 390 ("Plaintiff Eisen and the Georgia Subclass members *have suffered harm* as a result of purchasing unsafe and defective water supply lines that were not merchantable.").] Plaintiffs argue that their allegation is based on "Fluidmaster's claim of a vast market share of replacement plumbing parts and the high likelihood that Plaintiff Eisen and other consumers will suffer future harm as a result of this company's deceptive and unfair practices." [148, at 23.] This argument is not persuasive. Even if Fluidmaster does have a vast market share of replacement plumbing parts, that in no way indicates a likelihood that Plaintiff Eisen is somehow going to be harmed by that market share. In order to state a claim under the GUDTPA, Plaintiff Eisen must allege that, at some point in the

future, he is likely to be damaged by Defendant's deceptive trade practices. Plaintiff has failed to do so, and thus Plaintiffs' GUDTPA claim is dismissed without prejudice.

### G. Pennsylvania Unfair Trade Practices and Consumer Protection Law

In Plaintiffs' nineteenth cause of action, they allege that Defendant violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1 *et seq*. [See 127, ¶¶ 428–40.] In response, Plaintiffs have voluntarily dismissed this cause of action. [148, at 21 n.17.] Accordingly, Plaintiffs' nineteenth cause of action is dismissed.

### H. Unjust Enrichment under California Law

Defendant moves to dismiss Plaintiffs' unjust enrichment claim brought under California law, arguing that California does not recognize a cause of action for unjust enrichment.

In California, "there is not a standalone cause of action for 'unjust enrichment'"—instead, that term "is synonymous with 'restitution.'" *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (Cal. Ct. App. 2010); *Jogani v. Superior Ct.*, 81 Cal. Rptr. 3d 503, 511 (Cal. Ct. App. 2008)). That being said, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Id.* (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 166 Cal. Rptr. 3d 864, 872 (Cal. Ct. App. 2014)). A quasi-contract claim is an equitable claim alleging that the "defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Id.* (quoting 55 Cal. Jur. 3d Restitution § 2); see also *McBride v. Boughton*, 20 Cal. Rptr. 3d 115, 122 n.6 (Cal. Ct. App. 2004) ("'Quasi-contract' is simply another way of describing the basis for the equitable remedy of restitution when an unjust enrichment has occurred."). The Court is inclined to follow *Astiana* and interpret Plaintiffs' unjust enrichment claim under California law as a quasi-contract claim seeking restitution.

One could argue that Plaintiffs' equitable claim of unjust enrichment should be dismissed as duplicative of Plaintiff's breach of contract and fraud claims. But "there's no rule against inconsistent pleadings in * * * a single suit." *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 597 (7th Cir. 2012) (quoting Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.")); see also *Astiana*, 783 F.3d at 762–63 ("To the extent the district court concluded that the cause of action was nonsensical because it was duplicative of or superfluous to Astiana's other claims, this is not grounds for dismissal (citing Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."))); *Loop AI Labs Inc. v. Gatti*, 2015 WL 5158639, at *6–7 (N.D. Cal. Sept. 2, 2015) (same). While Plaintiffs' unjust enrichment claim may eventually give way to Plaintiffs' breach of contract and fraud claims, Plaintiffs may plead in the alternative at this stage in the litigation.

Defendant's motion to dismiss Plaintiffs' claim of unjust enrichment under California based on its argument that California law does not recognize a cause of action for unjust enrichment is denied.

## IV.     Conclusion

For the foregoing reasons, Defendant Fluidmaster's motion to dismiss [136] is granted in part and denied in part.


Date: February 3, 2016          _____
                                Robert M. Dow, Jr.
                                United States District Judge