**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
<u>EASTERN DIVISION</u>**

| | |
|---|---|
| **IN RE: FLUIDMASTER, INC., WATER CONNECTOR COMPONENTS PRODUCTS LIABILITY LITIGATION** | Case No. 1:14-cv-05696 MDL No. 2575 |
| | Honorable Robert M. Dow, Jr. Honorable Jeffrey T. Gilbert, Magistrate Judge |
| This Document Relates to the Following Pending Actions: *Rensel, et al., v. Fluidmaster, Inc.* USDC Case No. 14-cv-000648  *Sullivan, et al., v. Fluidmaster, Inc.,* USDC Case No. 1:14-cv-05696  *Hardwick v. Fluidmaster, Inc.* USDC Case No. 1:14-cv-00363  *Hungerman, et al. v. Fluidmaster, Inc.* USDC Case No. 2:14-cv-00994  *Wyble v. Fluidmaster, Inc.* USDC Case No. 14-cv-01826  *Larson v. Fluidmaster, Inc.* USDC Case No. 1:14-cv-10222-JWD  *Smith v. Fluidmaster, Inc.* USDC Case No. 1:16-cv-00932 | |

**FLUIDMASTER, INC.'S OPPOSITION
<u>TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

    A. Fluidmaster Manufactures and Sells Water Connectors ............................ 2

    B. The Connectors at Issue Vary Significantly and Are More than Ten Years Old ........ 3

    C. Fluidmaster Connectors Fail Less than .005% of the Time and Are Not Defective ..... 3

    D. The Limited Failures Typically Result from Individualized Misuse, Which Absolves Fluidmaster of Liability ................ 4

    E. Insurance Companies Compensate Homeowners For Damage, Leaving Proposed Named Class Representatives Atypical and Inadequate .............. 5

ARGUMENT ......................................................................................................... 5

I. PLAINTIFFS' NATIONWIDE CLRA CLASS FAILS AS A MATTER OF LAW ......... 5

    A. The Putative CLRA Class, as Defined, Exceeds the Scope of the Statute ................. 6

    B. There Is No Evidence That There Are Any Members of the Putative CLRA Class ....... 7

    C. Choice of Law Principles Bar Nationwide Class Certification of a CLRA Class ......... 8

        1. California's Choice of Law Analysis Precludes Nationwide Certification ........... 9

            a. Material Differences in State Consumer Protection Laws Preclude Certification ................ 10

            b. Interests of Differing Jurisdictions Preclude Certification ............................ 11

            c. The Rights of Plaintiffs' Respective Home States Are Most Impaired ......... 12

        2. Illinois, Arizona, and Pennsylvania Choice of Law Analyses Precludes a Nationwide CLRA Class .......... 13

        3. New Hampshire Law Rejects Application of the CLRA to a Nationwide Class ...... 15

II. PLAINTIFFS CANNOT SATISFY RULE 23(a) PREREQUISITES FOR CLASS CERTIFICATION FOR ANY PROPOSED CLASSES ................................... 16

    A. Plaintiffs Have Not and Cannot Satisfy Numerosity Requirements ........................ 16

    B. Proposed Class Representatives Are Not Typical of Proposed Classes .................. 18

        1. Rensel and Rhyne Only Experienced Coupling Nut Fractures and Cannot Represent a Nationwide Class for All Connectors (Class #1) ............ 18

        2. Proposed SubClass Representatives Only Allege Issues with Coupling Nuts or Faucet Connectors Precluding Representation of State Subclasses for All Connectors (Class #2) ............ 20

i

      3.  The Named Plaintiffs' Connectors Have Distinguishing Purchase and Installation Issues Which Destroys Certification................................ 20

      4.  Only One Named Plaintiff Could Have Relied Upon the Warranty or No Burst Label............................................................................................ 21

   C.  Class Representatives Cannot Adequately Represent the Proposed Class ................. 21

   D.  Lack of Commonality As to Law or Facts Precludes Certification ........................... 23

      1.  Variations in Products and Uses Demonstrate Lack of Commonality ................ 24

      2.  Legal Variations Across States Preclude Commonality as to Law...................... 24

III. CERTIFICATION SHOULD BE DENIED FOR FAILURE TO ESTABLISH A CLASSWIDE DAMAGES THEORY ............................................................................ 25

   A.  Fluidmaster Never Offered a Warranty Against "Defects" ....................................... 25

   B.  "No Burst" Is Not a Guarantee that $10 Connectors Would Never Burst................. 26

IV. PLAINTIFFS FAIL TO MEET THEIR BURDEN ON RULE 23(b)(3) PREDOMINANCE REQUIREMENT FOR ALL PROPOSED CLASSES ................... 27

   A.  Common Issues of Law Do Not Predominate in the Putative CLRA Class As Individualized Issues of Reliance Predominate .......................................... 27

   B.  Common Issues of Fact Do Not Predominate........................................................... 30

      1.  Individualized Issues of Installation of Coupling Nut Preclude Certification ..................................................................................................... 30

      2.  Individualized Issues Regarding Use of Products Preclude Certification ........... 31

      3.  Individual Issues Predominate Plaintiffs' Warranty Sub-Classes ....................... 31

V.  PLAINTIFFS ARE NOT ENTITLED TO ISSUE CERTIFICATION BECAUSE INDIVIDUALIZED ISSUES PREDOMINATE OVER ANY COMMON QUESTIONS ................................................................................................................ 32

CONCLUSION.................................................................................................................... 34

4822-0983-3012.v1

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Allen v. Hyland's Inc.*,
    300 F.R.D. 643 (C.D. Cal. 2014) ........................................................................... 13

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) .............................................................................................. 22

*Barbara's Sales, Inc. v. Intel Corp.*,
    227 Ill.2d 45 (2007) ....................................................................................... 14, 27

*Barten v. State Farm Mut. Auto. Ins. Co.*,
    28 F. Supp. 3d 978 (D. Ariz. 2014) ..................................................................... 10

*Board of Education  v. A, C & S, Inc.*,
    546 N.E.2d 580 (Ill. 1989) ................................................................................... 33

*Bruno v. Quten Research Institute, LLC*,
    280 F.R.D. 524 (C.D. Cal. 2011) ......................................................................... 13

*Butler v. Sears, Roebuck & Company*,
    727 F.3d 796 (7th Cir. 2013) ............................................................................... 24

*Clark v. Experian Information Solutions, Inc.*,
    256 Fed. Appx. 818 (7th Cir. 2007) ..................................................................... 33

*Cohen v. DIRECTV, Inc.*,
    178 Cal. App. 4th 966 (2009) .............................................................................. 28

*Comcast Corporation v. Behrend*,
    133 S. Ct. 1426 (2013) ................................................................................... 25, 27

*Daniel v. Ford Motor Company*,
    806 F.3d 1217 (9th Cir. 2015) ............................................................................. 28

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ............................................................................................... 4

*De La Fuente v. Stokely-Van Camp, Inc.*,
    713 F.2d 225 (7th Cir. 1983) ............................................................................... 18

*Driscoll v. Standard Hardware, Inc.*,
    785 N.W. 2d 805 (Minn. App. 2010) ................................................................... 23

*Dupre v. G.D. Searle & Company*,
    No. C84-146-L, 1987 WL 158107 (D.N.H. Apr. 28, 1987) .................................. 16

4822-0983-3012.v1

*Eimers v. Honda Motor Co.*,
　785 F. Supp. 1204 (W.D. Pa. 1992)................................................................... 10

*Federal Insurance Company v. J.K. Manufacturing Company*,
　933 F. Supp. 2d 1065 (N.D. Ill. 2013) ...................................................... 10, 13, 14

*Flory v. Silvercrest Industries, Inc.*,
　633 P.2d 383 (Ariz. 1981) .................................................................................. 29

*Forcellati v. Hyland's, Inc.*,
　No. CV 12-1983-GHK MRWX, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)...................... 13

*General Telephone Company of Southwest v. Falcon*,
　457 U.S. 147 (1982)............................................................................................. 8

*Gianino v. Alacer Corporation*,
　846 F. Supp. 2d 1096 (C.D. Cal. 2012) ............................................... 10, 11, 12, 27

*Gray v. Toyota Motor Sales, U.S.A., Inc.*,
　554 Fed. Appx. 608 (9th Cir. 2014)................................................................... 30

*Groussman v. Motorola, Inc.*,
　No. 10 C 911, 2011 WL 5554030 (N.D. Ill. Nov. 15, 2011)................................. 22

*Hardwick v. Fluidmaster*,
　Case No. 1:14-cv-00363 (D.N.H.) ...................................................................... 16

*IKO Roofing Shingle Products Liability Litigation*,
　757 F.3d 599 (7th Cir. 2014) ............................................................................. 24

*In re Bridgestone/Firestone, Inc.*,
　288 F.3d 1012 (7th Cir. 2002) ..................................................................... passim

*In re General Motors*,
　241 F.R.D. 305 (S.D. Ill. 2007) ......................................................................... 33

*In re Sulfuric Acid Antitrust Litigation*,
　743 F. Supp. 2d 827 (N.D. Ill. 2010) ................................................................... 9

*In re Telectronics Pacing Systems, Inc.*,
　168 F.R.D. 203 (S.D. Oh. 1996)......................................................................... 23

*In re Tobacco II Cases*,
　46 Cal. 4th 298 (2009) ...................................................................................... 28

*Koos v. First National Bank of Peoria*,
　496 F.2d 1162 (7th Cir. 1974) ........................................................................... 22

iv

*LaBounty v. American Insurance Company*,
122 N.H. 738 (1982) ........................................................................................ 16

*Lane v. C. A. Swanson & Sons*,
130 Cal. App. 2d 210 (1955) ........................................................................... 27

*Lyon v. Caterpillar, Inc.*,
194 F.R.D. 206 (E.D. Pa. 2000) ...................................................................... 15

*Mazza v. American Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .................................................................... passim

*McCann v. Foster Wheeler LLC*,
48 Cal. 4th 68 (2010) ...................................................................................... 12

*McCarter v. Kovitz Shifrin Nesbit*,
No. 13 C 3909, 2015 WL 74069 (N.D. Ill. Jan. 5, 2015) ............................... 33

*Messner v. Northshore University Healthsystem*,
669 F.3d 802 (7th Cir. 2012) ............................................................................ 8

*Mirkin v. Wasserman*,
5 Cal. 4th 1082 (1993) .................................................................................... 28

*Oshana v. Coca-Cola Company*,
472 F.3d 506 (7th Cir. 2006) .......................................................................... 18

*Parko v. Shell Oil Company*,
739 F.3d 1083 (7th Cir. 2014) .................................................................. 27, 28

*Pella Corporation v. Saltzman*,
606 F.3d 391 (7th Cir. 2010) .......................................................................... 24

*Retired Chicago Police Association v. City of Chicago*,
7 F.3d 584 (7th Cir. 1993) .............................................................................. 17

*Rice v. Sunbeam Products, Inc.*,
No. CV 12-7923-CAS-AJWX, 2013 WL 146270 (C.D. Cal. Jan. 7, 2013) ............ 26

*Robinson v. Sheriff of Cook County*,
167 F.3d 1155 (7th Cir. 1999) ........................................................................ 22

*Roe v. Town of Highland*,
909 F.2d 1097 (7th Cir. 1990) ........................................................................ 17

*Saltzman v. Pella Corporation.*,
257 F.R.D. 471 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010) ...................... 7

v

*Siegel v. Shell Oil Co.*,
256 F.R.D. 580 (N.D. Ill. 2008), *aff'd*, 612 F.3d 932 (7th Cir. 2010) ...................................... 15

*Suchanek v. Sturm Foods, Ind.*,
764 F.3d 750 (7th Cir. 2014) ........................................................................................ 23

*Tait v. BSH Home Appliances Corporation*,
289 F.R.D. 466 (C.D. Cal. 2012) ................................................................................. 29

*Townsend v. Sears, Roebuck & Company*,
227 Ill. 2d 147 (2007) ....................................................................................... 13, 14, 15

*Trabakoolas v. Watts Water Technologies, Inc., et al.*,
3:12-cv-01172-WHO, Dkt. No. 285 (N.D. Ca. filed March 8, 2012) .............................. 1, 4, 5

*Wal-Mart Stores, Inc., v. Dukes*,
564 U.S. 338 (2011) ................................................................................... 23, 27, 28

*Wilson v. Hewlett-Packard* Co.,
668 F.3d 1136 (9th Cir. 2012) ...................................................................................... 30

## Statutes and Codes

California Civil Code,
Section 1760 .................................................................................................................. 6
Section 1761(c) .............................................................................................................. 6
Section 1761(d) .............................................................................................................. 6
Section 1780(a)(1)-(5) ................................................................................................ 11

California Consumers Legal Remedies Act ........................................................................ passim

Georgia Unfair and Deceptive Trade Practices Act ................................................................ 11

Illinois Uniform Deceptive Trade Practices Act .................................................................. 11

## Rules and Regulations

Federal Rule of Evidence
Rule 702 ......................................................................................................................... 4

Federal Rules of Civil Procedure,
Rule 23 .............................................................................................................. 1, 2, 16
Rule 23(a) ..................................................................................................................... 16
Rule 23(a)(2) ................................................................................................................ 23
Rule 23(a)(3) .......................................................................................................... 21, 22
Rule 23(a)(4) .......................................................................................................... 21, 22
Rule 23(b)(3) .......................................................................................................... 27, 32
Rule 23(c)(4) .......................................................................................................... 32, 33

4822-0983-3012.v1

## <u>Other Authorities</u>

Second Restatement of Conflict of Laws,
    Section 6 ................................................................................................................... 14
    Section 6(2)(b) .......................................................................................................... 13
    Section 6(2)(c) ..................................................................................................... 13, 14
    Section 6(2)(e) ..................................................................................................... 13, 14
    Section 145 ............................................................................................................... 14
    Section 145(2) ..................................................................................................... 14, 15
    Section 147 ............................................................................................................... 13
    Section 148 ............................................................................................................... 15
    Section 148(1) .......................................................................................................... 15

4822-0983-3012.v1

## INTRODUCTION

Since the 1980s, Fluidmaster, Inc. ("Fluidmaster") has sold more than 153 million water connectors, and more than 99.99% of these connectors have never failed. Moreover, of the miniscule number of claims, nearly all are the result of user error in installation and/or failure to follow user instructions and heed warning labels – misuse that absolves Fluidmaster of liability, as previously conceded by Plaintiffs' counsel in a nearly identical class action.[1]

Desperate to overcome the many fatal impediments to class certification under Rule 23, Plaintiffs fabricate an umbrella – "design defect" – theory to loosely stitch together a class for *six* types of connectors, regardless of their function, use environment, date of manufacture, composition, materials, improper installation, and warranties, among other variations, not to mention the absence of any damages for nearly all putative class members. Fourteen Plaintiffs, who, collectively, purchased just *two* types of these varied connectors, and some of whom experienced a rupture more than ten years after purchasing a home with such a connector – or who experienced no rupture at all – seek to certify a class under the guise of an all-encompassing "defect." As explained in detail below, Plaintiffs have no factual or legal foundation for the present litigation, let alone for class certification.

Plaintiffs' proposed nationwide class under the California Consumers Legal Remedies Act ("CLRA") fails as a matter of law because (i) Plaintiffs' definition of the class exceeds the scope of the statute, improperly encompassing far more than "individuals" who are "consumers"

---

[1] "This misuse of the [toilet connectors] would absolve Watts Defendants for any liability from the Coupling Nuts' failure." *See* Declaration of Carolyn Toto ("Toto Decl."), dated June 29, 2016, Ex. 3 (*Trabakoolas v. Watts Water Technologies, Inc., et al.*, 3:12-cv-01172-WHO, Dkt. No. 285 (N.D. Ca. filed March 8, 2012), Mtn. for Final Approval of Class Action Settlement, filed 6/27/2014, at 18:19-20). The *Watts* case involved similar facts as the present action, similar causes of action, including a cause of action under the California Consumers Legal Remedies Act, and the same class action counsel. *Compare* Toto Decl. Ex. 1 (Second Am. Compl. in *Watts*) *with* Plaintiffs' First Consolidated Class Action Compl., Dkt. No. 127 (filed July 27, 2015).

purchasing goods for "personal, family, or household purposes"; (ii) Plaintiffs provide *no* evidence that there are any members that fit within the proposed definition of the class and even the proposed named class representatives are not members of the defined class; and (iii) choice of law principles preclude application of the CLRA to all other 49 other states.

Furthermore, Plaintiffs fail to meet the gatekeeping requirements under Rule 23. Looking behind Plaintiffs' umbrella defect theory, the classes disintegrate for lack of numerosity, typicality, adequacy, and commonality. Indeed, the Seventh Circuit has made clear that even where there is an "abnormally high failure rate" of a product, class certification is improper where, like here, a particular failure "depends on *other* attributes" of the product. *See In re Bridgestone/Firestone, Inc*., 288 F.3d 1012, 1018 (7th Cir. 2002).

Nor can Plaintiffs certify a class without a valid classwide theory of damages when their own purported experts propose to calculate the value associated with representations at the point of sale of the terms "10-year warranty" and "No Burst" when they (i) misunderstand the actual language of the express warranty; (ii) the words "No Burst" are not, as a matter of law, a promise of perfection; and (iii) in many cases, the water connectors were sold without a warranty of any kind. Accordingly, Plaintiffs' motion for class certification should be denied outright.

## STATEMENT OF FACTS

**A. Fluidmaster Manufactures and Sells Water Connectors**

Fluidmaster is a family-owned California company in existence since 1957. Declaration of Michael Morgan ("Morgan Decl."), dated June 29, 2016, ¶ 3. In 1985, Fluidmaster began designing, manufacturing and/or distributing flexible braided stainless steel supply lines that transport water from a supply pipe to a plumbing fixture. *Id.* ¶ 4. These water supply lines, usually selling for less than $10, consist of three principal parts: an inner flexible tubing, an outer braided steel wire housing, and coupling nuts to attach to plumbing fixtures. *Id.* ¶ 6-7.

2

**B.    The Connectors at Issue Vary Significantly and Are More than Ten Years Old**

At issue in this action are six different types of water supply lines, namely for: (i) toilets, (ii) dishwashers, (iii) ice makers, (iv) washing machines, (v) water heaters, and (vi) faucets (the "Connectors"). *Id.* ¶ 8; Plaintiffs' Mem. in Support of Class Action Motion ("Mem.") at 1, n. 1. Although Plaintiffs lump all of these Connectors under one broad category of "No-Burst Water Supply Lines," [2] (*id.*), these Connectors were manufactured using different materials, different warnings, all depending on the year manufactured, for different use environments, among other variations.  Morgan Decl. ¶ 10.

**C.    Fluidmaster Connectors Fail Less than .005% of the Time and Are Not Defective**

A calculation of claims filed, divided by total products sold, establishes that failure rates for Fluidmaster's products are infinitesimal.  *See* Declaration of Mariah Brandt, Ex.22 (Palmer Rep.

---

[2]  This term is further improper as Fluidmaster ceased using the "No-Burst" trademark in 2011.  *See* Morgan Decl. ¶ 9.

4822-0983-3012.v1

at ¶¶ 5, 21)[3]. These numbers belie Plaintiffs' design defect theory. Plaintiffs' counsel previously reached this very conclusion in the *Watts* case agreeing with the mediator, stating:

> As *aptly* stated by the Honorable Layn R. Phillips (Ret.) who presided over the lengthy mediation process . . . "Plaintiffs faced *substantial risks* . . . given the uncertainty regarding whether any class could be certified, whether any certified class could be maintained through trial, and whether Plaintiffs could establish a defect in light of Defendants' contention that the failure rate for the product was *far too low for any sort of 'defect' to exist.*"

*See* Toto Decl., Ex. 3 (*Watts Water Technologies, Inc.,* Dkt. No. 285 (Mtn. for Final Approval of Class Action Settlement, filed 6/27/2014, at 17:18-18:2) (emphasis added))).

A comparison of the number of specific connectors sold to the number of claims received indicates an extremely low percentage of "failure" claims, even including user-caused failures.

| Product | Dates of Manufacture | Number of Sales | Claims Received | Claims Percentage |
|---------|----------------------|-----------------|-----------------|-------------------|
| ██████████ | ████ | ███ | ██ | ████ |
| █ ███ | | | | |
| | | | | |
| | | | | |
| | | | | |
| ██████████ | | | █ | |

Palmer Rep. at ¶5. Not only does the negligible failure rate negate a "defect" theory, Plaintiffs' experts failed to even confront the issue in their respective reports.[5]

**D. The Limited Failures Typically Result from Individualized Misuse, Which Absolves Fluidmaster of Liability**

Here, the vast majority are due to improper installation and misuse. For instance, ██████████

██████████████████████ received concerning acetal coupling nut fractures on the toilet

---

[3] This declaration is filed concurrently in support of Fluidmaster's Motion to Exclude Plaintiffs' Experts.
[4] Each connector is either EPDM or Santoprene Hose.
[5] Fluidmaster concurrently moves to exclude and strike Plaintiffs' experts' testimony pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579 (1993), and in further support of this memorandum in opposition to class certification.

4822-0983-3012.v1

connectors, 95% are due to provable over-tightening. Palmer Rep. at ¶ 5, 22; *see also* Toto Decl., Ex. 8 (Wyble Dep. 43:4-44:23) (confirming wrench marks). Similarly, of the claims actually received concerning connector hose bursts, over 97% are due to improper exposure to corrosive materials, a potential risk against which Fluidmaster specifically warns. Palmer Rep. at ¶ 22. This misuse absolves Fluidmaster of liability. *See supra* n. 1.

## E. Insurance Companies Compensate Homeowners For Damage, Leaving Proposed Named Class Representatives Atypical and Inadequate

For the tiny percentage of users whose Connectors broke, insurance companies have compensated the user through insurance policies. Besides the named Plaintiffs, there are fewer than ten open loss claims held by a non-insurance company. Morgan Decl. ¶ 27(a). And while this MDL includes many insurance subrogation actions, no insurance company is a proposed named class representative, despite having over 99% of the known claims at issue. Mem at. 14-18.[6] No individual can adequately represent the insurance industry as a class representative.

Moreover, as explained below, each of the proposed named class representatives has very specific factual issues which require individualized analyses. These factual variances render each proposed class representative atypical of putative class members such that that no class can be certified under Rule 23. *See infra*, Parts II-IV.

## ARGUMENT

## I. PLAINTIFFS' NATIONWIDE CLRA CLASS FAILS AS A MATTER OF LAW

Plaintiffs seek to certify a nationwide class under the CLRA defined as follows:

> All persons who *purchased or leased* a No-Burst Line, not for resale, *or sustained damage from the failure of a No-Burst Water Supply Line*, between April 24, 2011, and the date of certification.

---

[6] The same issue was acknowledged by Class Counsel in *Watts,* "the persons most affected by the settlement are homeowners insurance companies who generally compensate the homeowners for the damages, and then pursue a right of subrogation." *See* Toto Decl., Ex. 4 (*Watts,* Dkt. No. 287 (Notice of Farmers Ins. Obj. to Proposed Settlement, filed 7/8/2014, at 4:9-12)).

4822-0983-3012.v1

Mem. at 20 (emphasis added).

Plaintiffs posit a world where Home Depot, a Georgia company, sells a Fluidmaster Connector (made in Mexico, Morgan Decl. ¶ 5) to a Georgia homeowner while in Georgia, with the injury from the rupture occurring in Georgia, and argue to this Court that California law governs. Such application is as wrong as it sounds. As proposed, the class not only exceeds the statutory scope of the CLRA, but Plaintiffs provide no evidence that either the named plaintiffs or any other individuals belong to this class. Furthermore, choice of law principles preclude the application of the CLRA to all 49 other states. Accordingly, certification must be denied.

## A.      The Putative CLRA Class, as Defined, Exceeds the Scope of the Statute

The CLRA specifically protects "consumers" from unfair and deceptive business practices. *See* Cal. Civ. Code § 1760. A consumer, in turn, is defined as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." *See id*. § 1761(d). By definition, then, merely having "sustained damage from the failure of a No-Burst Water Supply Line" does not, by itself, make one a "consumer" under the CLRA. Thus, the second clause of the proposed class definition is irrelevant, and all putative class members must have purchased or leased the product after April 24, 2011 to qualify for the class. *See id*. Otherwise, *any* person, regardless of purchase, whose property was damaged by any Connector, such as someone damaged by a product failure in an adjacent apartment would be in the class, despite not being a "consumer" under the CLRA. *Id.*[7] Moreover, to qualify for the putative CLRA class, its members must have purchased or leased the product for their own "personal, family, or household purposes." *Id.* § 1760.

Fluidmaster primarily sells its Connectors to wholesalers and retailers across the United

---

[7]   As defined, the proposed class definition is also faulty because the statute expressly limits "consumers" to individuals and not "persons," which could also include entities. *Compare id.* § 1761(d) *with* (c).

States. Morgan Decl. ¶ 11. Market research data conducted by Fluidmaster pre-dating this lawsuit establishes that Connectors are primarily sold to plumbers, contractors, and wholesalers. *See* Morgan Decl., Ex. 1 at 16-17 (Connector Sourcing/Business Review, Feb. 2010). Thus, the many plumbers, contractors and developers who are the purchasers of the Connectors do not qualify as consumers under the CLRA because they do not acquire the products for personal purposes. Accordingly, Plaintiffs' proposed definition of "[a]ll persons" who "purchased or leased" exceeds the scope of the CLRA consumer statute and certification should be denied.

**B.      There Is No Evidence That There Are Any Members of the Putative CLRA Class**

Because the class must be comprised of those who purchased or leased a No-Burst Line *after* April 24, 2011, dispositive questions arise: what admissible evidence have the Plaintiffs presented to support the propositions that (i) a class even exists or that (ii) any of the putative class representatives are actually in the class? *See Saltzman v. Pella Corp.*, 257 F.R.D. 471, 475 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010) (implied requirements for certification include that "an identifiable class exists" and "that the named representatives are members of the class"). The answers are simple. While the Plaintiffs propose Rensel and Rhyne as the representatives of the CLRA class, neither could be one of its members. First, neither is a California resident and neither purchased his or her Connector in California. Mem. at 15-16.[8] Further, Rensel purchased his connector in February 2011 – *before* the April 24, 2011 cut-off. Mem. at 15. With respect to Rhyne, she testified that she did not purchase her toilet connector; a friend of hers did. Rhyne Dep. 36:5-7. To the extent she purports to testify ***when*** her friend purchased the connector, such statement is inadmissible hearsay.[9] *See* Def.'s Objections to Non-

---

[8] *See* Rensel Dep. at 54:20- 55:3; Rhyne Dep. 32:15-33:13.
[9]   Rule 23 is not a "mere pleading standard." *Comcast Corp. v. Behrend,* 133 S.Ct. 1426, 1432 (2013) (citations omitted). "[A]ctual, not presumed, conformance with Rule 23(a) remains ... indispensable."

4822-0983-3012.v1

Expert Evidence.[10]

Further, Plaintiffs have failed to identify *any* class member that actually falls within a class of "consumers" who purchased each of the various Connectors *after* April 24, 2011. ██████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████. Morgan Decl. ¶¶ 16-19.[11]  Plaintiffs offer no evidence that any EPDM or Santoprene-based Connectors were purchased by anyone within the relevant time frame.  And given the fact that one would have had to buy a part more than ten years old to be in the class (with the exception of ice makers), it is unlikely that many, if any, such persons exist.

Beginning in 2010, Fluidmaster sold the toilet connectors designed and manufactured by a third party. This toilet connector includes a different design and manufacturing of the acetal coupling nut. Morgan Decl. ¶ 13.  Plaintiffs' experts do not opine that the newer design is defective.  Thus, Plaintiffs must show that there are class members who purchased a coupling nut after April 2011 which was manufactured prior to 2010.  Whether they could do so or not, is immaterial; Plaintiffs have simply failed to provide any admissible evidence that any such class member even exists.  Thus, having failed in their burden, as a matter of law Plaintiffs' CLRA class cannot be certified.

### C.  Choice of Law Principles Bar Nationwide Class Certification of a CLRA Class

The Seventh Circuit has recognized that "[s]tate consumer protection laws vary

---

*Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 160 (1982). Indeed, in the Seventh Circuit, the plaintiff must establish each of the Rule's requirements by a preponderance of the evidence. *See Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 811 (7th Cir. 2012) (citations omitted).

[10]  Fluidmaster is concurrently filing Objections to Non-Expert Evidence upon which Plaintiffs purport to relyattached hereto as Exhibit A.

[11]  Water heater Connectors have always been made of EPDM. *See* Morgan Decl. ¶ 16.

4822-0983-3012.v1

considerably, and courts must respect these differences rather than apply one state's laws to sales in other states with different rules." *Bridgestone*, 288 F.3d at 1018. In *Bridgestone*, the court addressed whether class certification was proper in a case involving defective tires that "experienced an abnormally high failure rate" and were recalled. *See id.* at 1014-15. After analyzing choice of law principles and manageability issues, the Seventh Circuit reversed the district court's certification of the classes, recognizing that "[n]o class action is proper unless all litigants are governed by the same legal rules." *Id.* at 1015. Indeed, the Seventh Circuit rejected the district court's view that state law pointed to the headquarters of defendants. *Id.* at 1015-16. Rather, "in all but exceptional cases [Indiana] applies the law of the place where the harm occurred." *Id.* at 1016. As the choice of law analysis demonstrates, the same conclusion is compelled here – where there is virtually *no* failure rate and dispositive issues turn on individual facts surrounding the alleged purchase/acquisition, misrepresentation, installation, use/misuse, and failure of the connector, as well as any injury, all of which occurred outside California.

### 1. California's Choice of Law Analysis Precludes Nationwide Certification

Plaintiffs' attempt to apply the CLRA to a nationwide class violates well-established choice of law principles. As this MDL consists of multiple purported class actions based on diversity of citizenship, the Court must apply the law that each of the transferor courts would have applied according to the choice-of-law rules of that forum state. *In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 852 (N.D. Ill. 2010). California, Illinois, Pennsylvania, and Arizona courts have consistently held that, in similar situations, the law of the state in which the transaction and injury occurred should apply to each class member's claim.[12] Thus, the CLRA cannot be applied to claims arising in the other 49 states and no nationwide CLRA class can be certified.

---

[12] *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) ("each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in

4822-0983-3012.v1

"California law may *only* be used on a classwide basis if the interests of other states are not found to outweigh California's interest in having its law applied." *Mazza*, 666 F.3d at 590 (emphasis added) (internal citations omitted). California courts apply a three-step test: (1) determine whether differences exist in the relevant law of each jurisdiction regarding the relevant issue; (2) examine each jurisdiction's interests in applying its own laws; and (3) compare the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interests are more impaired. *Id*. Here, application of this test weighs heavily against the CLRA to resolve the claims of citizens of other states.

### a. Material Differences in State Consumer Protection Laws Preclude Certification

Plaintiffs concede that "there are differences in state consumer protection laws." (Mem. at 23). And these differences are fatal where they "are material, that is, if they make a difference in this litigation." *Mazza*, 666 F.3d at 590. California courts have recognized that these differences are material and refuse to certify a nationwide CLRA class. *See id.*; *see also Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1100-01 (C.D. Cal. 2012). Here, as in *Mazza,* the conflicts between the CLRA and the consumer protection laws of other states are evident:

- **Statute of Limitations**: The statute of limitations for consumer protection laws range from one year to ten years among the 50 states. The CLRA statute is just three years. *See* Toto Decl., Ex. 20 ("State Survey") (*e.g.*, Arizona: one year, Illinois: three years, Georgia: four years, and Rhode Island: ten years).

---

which the transaction took place."); *Federal Ins. Co. v. J.K. Mfg. Co.*, 933 F. Supp. 2d 1065, 1078 (N.D. Ill. 2013) (applying the law where the products were used and injury occurred); *See also Eimers v. Honda Motor Co.*, 785 F. Supp. 1204, 1208 (W.D. Pa. 1992); *Barten v. State Farm Mut. Auto. Ins. Co.*, 28 F. Supp. 3d 978, 986 (D. Ariz. 2014).

4822-0983-3012.v1

- **Reliance**: Some states, including California, Maine, Minnesota, and Pennsylvania, require reliance in their consumer protection laws. Other states – Alabama, New Hampshire, Georgia (UDTPA), North Dakota, Tennessee and Vermont – do not. *See id.*

- **Who is a "Consumer"**:  While the CLRA applies only to "consumers," as discussed above, *see supra* I.A., other states do not include this requirement.  *See* State Survey.[13]

- **Damages and Remedies**:  The CLRA allows a plaintiff to seek actual damages, an injunction, and "any other relief that the court deems proper." Cal. Civ. Code § 1780(a)(1)-(5); *See* State Survey.  Other states allow only for injunctive relief.[14]

- **Other Material Differences**: The various consumer protection statutes also differ with respect to a scienter requirement.  For instance Colorado, South Dakota and Wisconsin require some degree of scienter for a valid consumer protection claim. Pennsylvania, among others, requires knowledge or reckless disregard. *See* State Survey. While some states like California under the CLRA, Alabama, and Massachusetts have a notice requirement, others like Michigan, Nebraska, Ohio, and Arkansas do not. *See* State Survey.  These material differences across the states weigh heavily against certification.  *See Bridgestone*, 288 F.3d at 1018.

### b.    Interests of Differing Jurisdictions Preclude Certification

"The consumer protection and fraud law of every state is important" because states have made a "reasoned judgment as to what conduct is permitted or proscribed within that state's borders." *Gianino*, 846 F. Supp. 2d at 1102 (citing *Mazza*, 666 F.3d at 591).  Because each putative class member presumably acquired his or her connector in their respective home state,

---

[13] Plaintiffs have already voluntarily dropped Hungerman and Sanborn's CLRA claims because they are not "consumers" under the CLRA. Mem. and Order, ECF No. 231 at 11, n.8.

[14] This Court acknowledged material differences among these laws in this action by dismissing Plaintiffs' causes of actions under the Illinois Uniform Deceptive Trade Practices Act and Georgia Unfair and Deceptive Trade Practices Act  as both statutes only allow injunctive relief and the relevant Plaintiffs could not demonstrate a likelihood of future harm. *See* Mem. and Order, ECF No. 231 at 29-31.

4822-0983-3012.v1

the "transaction" required for a consumer claim necessarily took place in that state. If that person (who may or may not be a "consumer") read the warning label or otherwise inspected the product before installation, he or she did so in the home state. Reliance on any alleged representations would also occur in each home state. Each connector was installed (whether properly or improperly) in the home state. And importantly, the products allegedly failed in the home state. Because each state has an interest in regulating and protecting activity within its own boundaries, the interests of the individual states in applying their own laws to consumer transactions taking place within their borders are "squarely implicated in this case." *Mazza*, 666 F.3d at 593.

### c. The Rights of Plaintiffs' Respective Home States Are Most Impaired

"California's interest in applying its law to residents of foreign states is attenuated," whereas "foreign states have a strong interest in the application of their laws to transactions between their citizens and corporations doing business within their state." *Id.* at 594. Further, California recognizes that the state in which the wrong occurred has the predominant interest in regulating or affecting conduct within its borders. *Id.* at 593. "California considers the 'place of the wrong' to be the state where the *last event necessary to make the actor liable occurred.*" *Id.* (emphasis added). The "last events necessary for liability as to the foreign class members— communication of the advertisements to the claimants and their reliance thereon in purchasing vehicles—took place in the various foreign states, not in California." *Id.* at 594. Likewise, the geographic location of an omission is the place of the transaction where it should have been disclosed. *Id.* at 593 (citing *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 94 n.12 (2010)). Here, the last events necessary for liability as to foreign class members necessarily took place in the respective home states. Thus, applying California law nationwide would impair other states' ability to protect their own citizens within their borders. *See Gianino*, 846 F. Supp. 2d at 1103.

4822-0983-3012.v1

The cases cited by Plaintiffs for a contrary conclusion are inapposite. They stand for nothing more than that a court may apply the CLRA where the defendant does not conduct a fact-specific analysis of the law in other states.[15] By contrast, Fluidmaster has done so here and the analysis can lead to but one conclusion: the CLRA cannot be applied nationwide in this case.

### 2. Illinois, Arizona, and Pennsylvania Choice of Law Analyses Precludes a Nationwide CLRA Class

The Illinois Supreme Court has adopted the choice-of-law analysis of the Second Restatement of Conflict of Laws ("Second Restatement"). *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 163 (2007); *Federal. Ins. Co*, *supra*, at 1074. The Parties agree that Arizona and Pennsylvania also follow the Second Restatement. *See* Mem. at 21. The Second Restatement provides that "the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence, the thing and the parties, in which event the local law of the other state will be applied." Second Restatement § 147 (1971); *Federal. Ins. Co*, *supra*, at 1074.

Section 6 requires the application of the law of each state. Of the seven factors in Section 6, the Illinois Supreme Court singles out three of them as relevant in tort cases: §§ 6(2)(b), (c), and (e). *Federal. Ins.*, 933 F. Supp. 2d at 1076 (citing *Townsend*, 227 Ill.2d at 170). Under § 6(2)(b), the relevant fora are Illinois, Arizona, and Pennsylvania. There are no policies in these fora that would favor applying one foreign law (California) over other foreign laws (laws of the home

---

[15] *See Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 540 (C.D. Cal. 2011) ("Because Defendants have *not identified any specific state's law or articulated any argument*, beyond citation to other cases, to indicate that there is a conflict, Defendants have not met their burden." (emphasis added)); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 658 (C.D. Cal. 2014) (holding that defendants "fail to provide *any case-specific analysis* addressing the differences among the state laws at issue,"); *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL 1410264, at *3 (C.D. Cal. Apr. 9, 2014) ("Defendants have provided no substantive, fact-specific analysis as to whether California . . . or the states where the sales occurred have the predominant interest here").

states of the putative class members).  *See Federal. Ins.*, 933 F. Supp. 2d at 1078; With respect to § 6(2)(c), the foreign states each have an interest "in ensuring that safe products are used within its borders, and in deterring the use of defective products within its borders." *Id.* at 1077. Similarly, these states also have an "interest in protecting its citizens…whose property is injured within its borders." *Id.* Lastly, under § 6(2)(e), all states have consumer protection laws enacted to provide the necessary protections to its citizens.  *See* Toto Decl., Ex. 20, State Survey.  Thus, this factor argues against the singular application of California law to all plaintiffs nationwide. *See Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill.2d 45, 74 (2007) (holding that section 6 of the Restatement does not compel application of California law).

When applying the principles of Section 6, in turn, Section 145 of the Restatement provides that the following factors must be taken into account:  (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.  Second Restatement § 145(2).

Here, an evaluation of these factors creates a *strong* presumption in favor of applying the law of the place of injury.  *Townsend*, 227 Ill.2d at 166.  Indeed, the presumption is *"difficult to overcome."*  *Federal. Ins. Co*, *supra*, at 1074 (emphasis added).  The acquisition of, and the alleged injury caused by, the connectors invariably occurred in the individual home states. Indeed, Illinois courts hold that where an Illinois company could foresee that its product would be used in Indiana, Indiana had the stronger relationship to the occurrence.  *Id*. at 1075; *see also Townsend*, 227 Ill.2d at 168 ("Michigan has a strong relationship to the occurrence and the parties…Michigan is the place where James purchased the lawn tractor, the place where he used

4822-0983-3012.v1

the lawn tractor, and the place where he and the named plaintiffs . . . reside."). Plaintiffs do not and cannot rebut this presumption.

The remaining factors of Section 145 further support application of the laws of foreign states. Second Restatement at § 145(2). Specifically, the court must consider all conduct from any source contributing to the injury. *Townsend*, 227 Ill.2d at 169 (discussing contributory negligence). Here, as in *Townsend*, Fluidmaster alleges comparative fault in the installation of the connectors (ECF No. 272, at 169), which would have necessarily occurred in the person's home. Thus, this factor weighs against the application of California law. The third factor looks to the domicile, residence, place of incorporation and place of business of the parties. Fluidmaster is a California corporation and the putative class members are domiciled in the individual home states. This factor does not favor one state over another. *Townsend*, 227 Ill.2d at 169. With respect to the last factor, the location of the *acquisition of the product* determines where the relationship of the parties is centered. *Id.* Therefore, none of the factors tips toward the application of California law.[16]

### 3. New Hampshire Law Rejects Application of the CLRA to a Nationwide Class

Plaintiffs failed to even conduct the choice-of-law analysis under the rules of New Hampshire, which is the transferor forum for *Hardwick v. Fluidmaster*, Case No. 1:14-cv-00363

---

[16] Plaintiffs fare no better under Section 148 of the Second Restatement - relevant for claims based on consumer fraud and false representations. *See* Second Restatement § 148 (1971); *see also Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585 (N.D. Ill. 2008), *aff'd,* 612 F.3d 932 (7th Cir. 2010). "According to § 148(1) of the Restatement, where a plaintiff relies on a representation in the same state where that representation was made and received, the law of that state applies" *Siegel*, 256 F.R.D. at 585. Applying Section 148 in this case also mandates application of each state's consumer protection laws. *See Id.* (holding that the place of gas purchase made by putative class members controlled claims against gasoline companies for alleged state consumer protection law violations); *see Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 214 (E.D. Pa. 2000) (holding that under Section 148, "each putative class member's claim arises under the consumer fraud act of his or her state of residence or the state in which his or her boat was purchased").

4822-0983-3012.v1

(D.N.H.).[17] Applying New Hampshire law, the place of injury is the controlling factor. *See LaBounty v. Am. Ins. Co.*, 122 N.H. 738, 743 (1982); *Dupre v. G.D. Searle & Co.,* No. C84-146-L, 1987 WL 158107, at *1 (D.N.H. Apr. 28, 1987) (setting out the factors to be considered). The place of injury is, of course, the foreign state where the product allegedly broke.

In sum, under appropriate choice of law analysis, the law of each state must be applied and thus the Court cannot certify a Nationwide CLRA Class.[18]

## II.  PLAINTIFFS CANNOT SATISFY RULE 23(a) PREREQUISITES FOR CLASS CERTIFICATION FOR ANY PROPOSED CLASSES

Rule 23 gatekeeping requirements for class certification mandate that: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the representative's claims or defenses must be typical to those of the class; and (4) the representatives must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Plaintiffs have failed to satisfy any of these prerequisites for certification of their CLRA or state warranty sub-classes.

### A.    Plaintiffs Have Not and Cannot Satisfy Numerosity Requirements

In four sentences, Plaintiffs assert that numerosity is satisfied by simply relying on the number of open claims reported to Fluidmaster. Mem. at 26. Again, insurance companies with subrogated claims – none of whom is a named representative of any class – hold 99% of the claims Plaintiffs rely on for numerosity. *See, supra,* Statement of Facts, Section E. Plaintiffs offer no evidence that these insurance companies want to be members of a class and logic dictates that they will not.[19] Moreover these insurance companies ***cannot*** possess CLRA claims

---

[17] The *Hardwick* complaint is still in this MDL and part of this Class Certification Motion. Further, Hardwick is named as a Class Representative Plaintiff. Mem. at 18.

[18] Plaintiffs do not even claim to have a class representative for a California sub-class under the CLRA.

[19] In fact, 91% of the known claims are represented by separate counsel who have appeared in this MDL. Morgan Decl. ¶ 27(a).

as they are neither an individual under the statute nor can they use the Connectors for "home or personal use". Thus, Plaintiffs do not even claim to evidence to satisfy their burden of proving numerosity. *Roe v. Town of Highland*, 909 F.2d 1097, 1100 n.4 (7th Cir. 1990) (Plaintiff in class action has the burden of demonstrating the numerosity).

Beyond this, Plaintiffs face other hurdles they fail to overcome. First, Plaintiffs tie their class definitions to specific causes of action, yet make no attempt to show how many of the claims are governed by any cause of action. As demonstrated above in Section I.B., Plaintiffs provide no evidence that there are *any members* of the CLRA class, including the putative class representatives. Likewise, it means nothing for their proposed warranty class without demonstrating that a sufficient number of consumers purchased an EPDM or Santoprene Connector, or a coupling nut with the purportedly defective design during the relevant period.[20]

Second, Plaintiffs' attempt to establish numerosity by lumping all claims together also fails. There are six different types of Connectors, each of which is designed to operate in a different environment, and thus each has different design considerations. *See infra* II.B. When properly divided by product type, the number of even *potential* class members withers. ███████████

████████████████████████████████████████████████████████

████████████████████ Morgan Decl. ¶ 27(b).[21]

Third, Plaintiffs fail to prove numerosity for their putative state sub-classes. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 599 (7th Cir. 1993) ("Subclasses must satisfy the class action requirements. . . ."). ███████████████████████████

---

[20] ██████████████████████████████████████████████████

██ . Morgan Decl. ¶ 20.

[21] ██████████████████████████████████████████████████████

██████ claims themselves do not translate to individuals who satisfy the definition of the various proposed classes.

████████████████████████████████████████████

████████████████████████████████████

████████   *See* Toto Decl., Ex. 27(c).[22]  Moreover, 99% of these claims belong to insurance

companies.  *See* Morgan Decl. ¶ 27(a).  Class certification is, thus, improper.

### B.   Proposed Class Representatives Are Not Typical of Proposed Classes

A review of the facts of each proposed class representatives and the alleged purchase of a

Connector reveals that the characteristics of each individual are not similar and thus, the named

class representatives lack sufficient typicality for certification.  "A plaintiff's claim is typical if it

arises from the same event or practice or course of conduct that gives rise to the claims of other

class members and his or her claims are based on the same legal theory." *De La Fuente v.*

*Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).  "Even though some factual

variations may not defeat typicality, the requirement is meant to ensure that the named

representative's claims" have similar characteristics as to the claims of the greater class.  *Oshana*

*v. Coca-Cola Co.,* 472 F.3d 506, 514 (7th Cir. 2006).  Here, Plaintiffs do not satisfy this

requirement.  Specifically:

### 1.   Rensel and Rhyne Only Experienced Coupling Nut Fractures and Cannot Represent a Nationwide Class for All Connectors (Class #1)

With respect to the proposed CLRA class representatives, Rensel and Rhyne only allege

issues with the acetal coupling nut, and no more.  Mem. at 14-16.  Plaintiffs purport, however, to

have these two individuals represent a nationwide CLRA class of *all* Connectors – including

hose bodies.  Rensel and Rhyne, however, are not typical of the proposed class because:

---

[22] The actual numbers would likely be even lower for the putative warranty sub-classes.  From approximately 2004 to 2007, Fluidmaster did not offer a warranty on its connectors.  Morgan Decl. ¶ 35; *See infra* Part III.  And after 2007, the warranty was 5 years, rather than 10 years, for many of them.  Morgan Decl. ¶ 35.  Thus, Plaintiffs do not, and cannot show that many of the putative class members either received a warranty or experienced a failure within the shorter 5 year warranty period.

4822-0983-3012.v1

- **Parts Differ**.  An acetal coupling nut failure is different than a hose rupture involving faucet, washing machine, dishwasher, ice maker, or water heater Connectors.

- **Use Environment for Connectors Differ.**  The environment for a toilet Connector with an acetal coupling nut in the open differs from a faucet Connector which often exists in a more enclosed atmosphere, such as a cabinet underneath a sink, where corrosive chloride fumes escaping from improperly stored containers of cleaners and other products could potentially build up and deteriorate the stainless steel braid that envelopes the inner rubber tubing.  *See* Brandt Decl., Ex. 19 (Frankel Report at ¶ 21).

- **Materials Differ.**  Different Connectors had different inner linings depending on the type and age of the Connector.  *See* Morgan Decl. ¶¶ 15-19; *see* Materials Chart.[23]

- **Warning Labels Differ.**  An toilet connector with an acetal coupling nut has different warnings than hose bodies.   The acetal coupling nuts expressly stated: "PLASTIC NUT: HAND TIGHTEN ONLY!"  Morgan Decl. ¶ 32. The instructions also warned: "DO NOT OVERTIGHTEN."  *Id.* In addition, by 1999, a "HAND TIGHTEN ONLY" warning was etched into the coupling nut.  *Id.*[24]   Hose bodies of Connectors, on the other hand, carried instructions that the products should not be exposed to "corrosive material."  *Id.* ¶ 34.  By 2007, labels instructed not to clean with or expose the Connectors to household cleaners containing chlorine and that doing so could lead to flooding.  *Id.*  Accordingly, there is no proposed class representative for the CLRA class typical of all Connectors.

---

[23] ███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████                    *See* Materials Chart.

[24] Fluidmaster's internal investigations of claims based on a failure of an acetal coupling nut revealed that the vast majority of such failures were caused by overtightening with tools.  Morgan Decl. ¶ 33.

4822-0983-3012.v1

### 2. Proposed SubClass Representatives Only Allege Issues with Coupling Nuts or Faucet Connectors Precluding Representation of State Subclasses for All Connectors (Class #2)

Plaintiffs' putative state subclass representatives allege damages only from *either* (i) a toilet connector coupling nut or (ii) a faucet connector hose body, but not both. Mem. at 14-18. None of the faucet connectors has an acetal coupling nut, so any failure of an identified faucet connector is different from the identified toilet connector failures. As such, the claims made by representatives who owned faucet connectors are distinguishable from each other and all claims made by the Plaintiffs who had toilet connectors. *See supra* II.B.1.

Plaintiffs name fourteen putative class representatives to cover various permutations of the proposed classes. Mem. at 14-18. However, *not one* of the fourteen proposed representatives alleges failure of a dishwasher, ice maker, washing machine, or water heater connector. *Id.* As previously noted, there are significant differences between coupling nuts and hoses, and certainly between toilet Connectors and faucet Connectors and all other Connectors such that one type is not typical of all other Connectors. *Id.*; *See* Toto Decl., Ex. 22 (Connectors Summary Chart).

### 3. The Named Plaintiffs' Connectors Have Distinguishing Purchase and Installation Issues Which Destroys Certification

Each Plaintiff has a different story as to *who purchased* and installed their respective Connectors. Analysis of these facts is imperative to determine the standing of any plaintiff as a "consumer" under the proposed classes. If the Plaintiffs did not purchase the Connectors, they cannot be a "consumer."[25] *See supra* Part I.A. Only three of the Plaintiffs personally purchased their Connector.[26, 27] The remaining Plaintiffs either had the products purchased by a plumber or

---

[25] In this Court's decision on Fluidmaster's Motion to Dismiss, the Court "encourage[d] Plaintiffs to … review the validity" of their claims related to Plaintiffs being a consumer as the facts of the case continue to develop, based upon Plaintiffs voluntary dismissal of Hungerman and Sanborn's consumer protection claims. Mem. and Order, ECF No. 231 at 11, n.8.

[26] Excerpts of deposition transcripts are attached to the Toto Decl., Exs. 5-18

handy-man, or the Connectors were already installed when they purchased their property.[28]

Similarly, *who installed* the parts and an analysis of the installation must be conducted on an individual basis to determine causation because improper installation and other misuse absolves Fluidmaster of liability. *See supra* n.1. Here, only four of the Plaintiffs installed the alleged failed Connectors themselves.[29] The remaining ten either had their parts installed by a plumber, or they were installed prior to the Plaintiffs even owning their property.[30] These are gatekeeping issues as to liability that vary by individual plaintiff and preclude certification.

### 4. Only One Named Plaintiff Could Have Relied Upon the Warranty or No Burst Label

Plaintiffs' theory for assessing class-wide damages for their putative CLRA and Warranty classes is based on a calculation that assumes the buyer saw both the ten-year warranty and the "No Burst" label and purchased the product in reliance on those attributes. *See infra* Part III. Yet, only one of the Plaintiffs actually could have read, let alone relied on, the warranty or No Burst label at the time of purchase and the remaining Plaintiffs either did not see the Connector before it was installed or were not aware of any labels or advertising related to Fluidmaster and *never* inspected the label or relied on any warranty in the selection of the product. [31]

### C. Class Representatives Cannot Adequately Represent the Proposed Class

Each class must have at least one adequate representative. Fed. R. Civ. P. 23(a)(3), (4);

---

[27] Rensel (Dep. 54:20-22), Naef (Dep. 85:24-26:2), Ellefson (Dep. 51:20-52:-25)

[28] Rhyne (Dep. 32:2-9); Larson (Dep. 15:20-16:23); Kirsch (Dep. 19:7-13); Wyble (Dep. 81:2-6); Hungerman (Dep. 17:16-19); Sanborn (Dep. 15: 9-16, 25:11-15), Eisen (Dep. 12:25-13:14);Sullivan (Dep. 129: 5-8); Elder (Dep. 12:23-25); Hardwick (Dep. 15: 14-22, 61:15-20); Smith (Dep. 56:14-25))

[29] Rensel (Dep. 59: 15-24); Naef (Dep. 86: 14-15); Hungerman (Dep. 18:2-5); Ellefson (Dep. 54:7-11).

[30] Rhyne Dep. 33:12-13; Larson Dep. 52:7-25, Compl. ¶ 15; Kirsch Dep. 11:18-25; Wyble Dep. 11:6-7; Sanborn Dep. 15: 9-16, 25: 18-20; Sullivan Dep. 129: 5-8; Eisen Dep. 12:25-13:2; Elder Dep. 12:23-25; Hardwick Dep. 15: 14-22, 61:15-20; Smith Dep. 56:14-25.

[31] Rensel Dep. 59:10-18; 68:12-15;Rhyne Dep. 34:16-22; Larson Dep. 23:11-16; Kirsch Dep. 28:6-30:5; Naef Dep. 81:12-82:4; Wyble Dep. 65: 10-17, 80:17-25; 96:9-22; Hungerman Dep. 18:9-25; Sanborn Dep. 35:16-36:15; Sullivan Dep. 72:18-73:6; Ellefson Dep. 100:20-101:12; Eisen Dep. 71:5-10; Elder Dep. 22:24-23:13; Hardwick Dep. 15: 14-22, 61:15-20; Smith Dep. 86:9-12.

4822-0983-3012.v1

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 627 (1997). Adequacy under Rule 23(a)(4) "is really an aspect of [typicality under Rule 23(a)(3)]; if [the representative's] claim is atypical, he is not likely to be an adequate representative." *See Robinson v. Sheriff of Cook Cnty.*, 167 F.3d 1155, 1157 (7th Cir. 1999). Moreover, adequacy of named plaintiffs cannot be found where these named plaintiffs have an "incentive to tailor their arguments . . . to their particular situations as opposed to the situations of proposed class members in order to maximize Plaintiffs' recovery." *Groussman v. Motorola, Inc.*, No. 10 C 911, 2011 WL 5554030, *5 (N.D. Ill. Nov. 15, 2011). As previously noted, *see supra* Part II.B, proposed class representatives are not typical due to a number of individual inquiries which are dispositive of the claims in the case. Those individual factual variances surrounding the Connectors and the purchase and installation of the same necessarily require the class representatives to tailor their arguments to their respective, highly-specific factual circumstances.

In addition to the issues noted with respect to Rensel and Rhyne under typicality and relating to their CLRA claims, *see supra* Sections I, II.B.1, Rensel's and Rhyne's need to address contributory negligence defenses and/or questions related to damages present serious issues as to adequacy. *Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974) ("Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative"). Rhyne's acetal coupling nut, which was allegedly purchased and installed by a friend in 2012, showed signs of nicks and chips consistent with a tool installation, requiring significant focus on contributory negligence for failure to comply with instructions. *See* Brandt Decl., Ex. 16 (Meek Rep. at 15-16). Rensel fairs no better because he installed his toilet connector himself, but in his mother's home, not his own. *See* Mem. at 15. Thus, at least some

22

of the unique legal issues he will need to litigate – whether he's a consumer, contributory negligence, lack of damages – relate to whether he, in fact, can maintain a claim at all.

Nor can Plaintiffs credibly maintain that Larson is an adequate named representative for the Minnesota state negligence and strict liability subclasses when he, in fact, has suffered *no damages* whatsoever; his Connectors have *not* failed. *See* Larson Dep. 24-25:23-4. In Minnesota, a plaintiff can sue a manufacturer in tort only for damages resulting from physical injury to person or to property other than the product itself. *Driscoll v. Standard Hardware, Inc.*, 785 N.W. 2d 805, 815 (Minn. Ct. App. 2010). A class representative with no damages cannot maintain an action premised on injury (negligence and strict liability) when no such injury has occurred. *See In re Telectronics Pacing Systems, Inc.*, 168 F.R.D. 203, 218 (S.D. Oh. 1996) ("the Ohio representatives have no incentive to pursue the plaintiffs' negligence claims, since, as discussed above, they do not have negligence claims themselves").

## D. Lack of Commonality As to Law or Facts Precludes Certification

Members of a class may sue as representative parties on behalf of all members only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy Rule 23(a)(2), Plaintiffs' "claims must depend upon a common contention of such a nature that it is capable of *classwide resolution* . . . which means that determination of its truth or falsity will resolve an issue that is *central* to the validity of *each one of the claims in one stroke. Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis added). "Where the defendant's allegedly injurious conduct differs from plaintiff to plaintiff… no common answers are likely to be found." *Suchanek v. Sturm Foods, Ind.*, 764 F.3d 750, 756 (7th Cir. 2014). Here, Plaintiffs broadly and wrongly assert that all No-Burst Lines are standardized as to design, material and intended use to pretend that the common question central to each claim alleged is "whether the No-Burst Lines are defective." Mem. at 27. As previously noted, the Connectors at issue vary

4822-0983-3012.v1

as to years manufactured, materials used, the environment in which they are installed. *See supra* II.B.1. Such an array of product variations precludes a finding of a common defect. *See Bridgestone,* 288 F.3d at 1018-19.

### 1. Variations in Products and Uses Demonstrate Lack of Commonality

Like the Plaintiffs here, the *Bridgestone* plaintiffs argued that a particular defect led to all of the failures and thus, certification was proper. *Id.* In reversing the district court's certification of certain classes, the Seventh Circuit recognized that the tires "come in multiple diameters, widths, and tread designs" with "safety features and failure modes" which differ accordingly. *Id.* at 1019. Further, a particular failure "depends on *other* attributes of the tires" which would preclude a "once-and-for-all decision" about whether all tires "were defective, even if the law were uniform." *Id.* (emphasis in original). The same is true here. The failure of any particular Connector depends on a host of other attributes such as product material, use environment (specifically the high concentration of chlorides), date of manufacture and user misuse, which precludes a finding of a commonality as to the question of whether there is or is not a defect.[32]

### 2. Legal Variations Across States Preclude Commonality as to Law

As discussed in the choice of law section, the California CLRA does not outweigh the interests of other states, particularly where "the injury is decidedly where the *consumer* is located." *Bridgestone,* 288 F.3d at 1017 (emphasis in original); *see also* I.C. Plaintiffs give no attention to this gateway issue, and ultimately fail in providing support for their proposed

---

[32] Plaintiffs' citations to the contrary are inapposite. None of the cases deals with multiple versions of a product that underwent several design changes over a lengthy period of time, as is the case here. Two of them discuss predominance and commonality in single-product defect cases. *In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 602 (7th Cir. 2014) (roofing shingles); *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) (one line of windows). The third case discusses multiple designs and models of the machine at issue, but the defendant did not appear to contest the issue of defect; rather, the defendant did "not contend that any of the design changes eliminated the [defect], only that they diminished it." Further, there was no contention of user misuse, like here, that absolved the defendant of liability. *Butler v. Sears, Roebuck Co.*, 727 F.3d 796, 798 (7th Cir. 2013).

4822-0983-3012.v1

nationwide class under the California CLRA. As such, there are no material common questions of law within Plaintiffs' proposed Class # 1 under the nationwide class.

## III. CERTIFICATION SHOULD BE DENIED FOR FAILURE TO ESTABLISH A CLASSWIDE DAMAGES THEORY

Recognizing that a lack of classwide damages theory bars certification under *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432-33 (2013), Plaintiffs stretch to fabricate a damages theory that will apply to all putative CLRA and Warranty classes – but they fail to do so. Specifically, Plaintiffs proffer that two experts (Pittaoulis and Bernatowicz) will be able to calculate the value associated with representations at the point of sale associated with a "10-year warranty" and "No Burst." *See* Wallenstein Decl., Exs. 1 and 3 (Pittaoulis and Bernatowiczs' Proposed Methodology for Expert Reports). As a threshold matter, Plaintiffs claim that their theory of liability under the CLRA is one of *omission*, *see* Mem. at 30[33], and not misrepresentation, but their damages theory is based on misrepresentation. *See* Fluidmaster's Motion to Exclude Plaintiffs' Damages Experts Reports. But even under a misrepresentation theory of liability – contrary to their stated theory – Plaintiffs' damages theory is seriously flawed and reflects a fatal misunderstanding of the facts.

### A. Fluidmaster Never Offered a Warranty Against "Defects"

Plaintiffs' theory erroneously assumes that the express warranty pertained to design defects at the time of purchase. It did not. In 1999, Fluidmaster first offered a 10-year limited warranty. Morgan Decl. ¶ 35. ***From approximately 2004 to 2007, Fluidmaster's Connectors***

---

[33] Plaintiffs state: "because Plaintiff's theory is that [Fluidmaster] *omitted material information* about the propensity of the No-Burst Lines to fail, the need to establish a consumer's reliance does not, and cannot defeat predominance." Mem. at 30 (emphasis added). Understanding they cannot overcome individualized issues of reliance under Rule 23's predominance requirement, *see infra* IV, Plaintiffs avoid a misrepresentation theory and focus on omission. But Plaintiffs cannot maintain a classwide theory of damages under an omission theory, and thus, shift their liability theory to one of misrepresentation. Plaintiffs' class cannot be certified.

4822-0983-3012.v1

***did not offer any warranty. Id. Significantly, as no warranty was offered during this three year time frame, no claims of breach or misrepresentation can arise from purchases during this time period.*** After 2007, the Connectors at issue here came with either a 5-year, or 10-year warranty. Morgan Decl. ¶ 35.

After 2007, the limited express warranty for all products and its packaging directed customers to Fluidmaster's website for full details. *Id.* ¶ 36. The warranty is one for *repair or replacement* any product which "*proves to be defective in workmanship or materials* under normal use for the number of years from the date of purchase" specified for each product. *See* http://www.fluidmaster.com/warranty (emphasis added). Morgan Decl. ¶ 35. The warranty does not state that the product is guaranteed to be "free from defect" when purchased. Rather, it states that if the workmanship or materials *proves* to be defective – *i.e.*, as a result of a manufacturing defect – then Fluidmaster will repair or replace the product. *Id.* Plaintiffs' action, however, is limited to "design defect" (Mem. at 5, 10, 30) and, as a matter of law, a warranty for defects in materials and workmanship is not a "design defect." *See, e.g., Rice v. Sunbeam Prods., Inc.*, No. CV 12-7923-CAS-AJWX, 2013 WL 146270, at *12 (C.D. Cal. Jan. 7, 2013) ("the Court agrees with the federal courts to have considered the issue that the phrase "free from defects in material and workmanship" in defendant's limited warranty refers only to manufacturing defects, not design defects"). Thus, Plaintiffs' damages theory is fatally flawed. *See* Def.'s Mot. to Strike and/or Exclude Pittaoulis and Bernatowicz; *see also* Toto Decl., Ex. 23 ("Response to Trial Plan").

### B.    "No Burst" Is Not a Guarantee that $10 Connectors Would Never Burst

The "No Burst" trademark, which has not been used by Fluidmaster since 2011 (Morgan Decl. ¶ 9), cannot be used as a measure of damages due to misrepresentation at the point-of-sale because, as a matter of law, the breach cannot occur until *after* the product fails. *See, e.g., Lane*

4822-0983-3012.v1

*v. C. A. Swanson & Sons,* 130 Cal. App. 2d 210, 213 (1955) ("descriptive terms . . . such as 'Fireproof,' 'Stainless,' . . . 'Punctureproof,' 'Nonbreakable,'. . . do not, as a rule, amount to a representation of perfection."). Moreover, "No Burst" is mere puffery not actionable as a breach. *See* Response to Trial Plan; *see Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill.2d 45, 74 (2007) (citing cases in which labeling was deemed puffery rather than a promise). Thus, Plaintiffs have no class-wide theory to satisfy certification requirements as mandated by *Comcast*.

## IV. PLAINTIFFS FAIL TO MEET THEIR BURDEN ON RULE 23(b)(3) PREDOMINANCE REQUIREMENT FOR ALL PROPOSED CLASSES

Plaintiffs must also satisfy the requirements of Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any question affecting only individual members, and that class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23 (b)(3). "[Rule 23] 'does not set forth a mere pleading standard.'" *Comcast*, 133 S. Ct. at 1432 (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 350). "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Id.* "Mere *assertion* by class counsel that common issues predominate is not enough." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) (emphasis original).

### A. Common Issues of Law Do Not Predominate in the Putative CLRA Class As Individualized Issues of Reliance Predominate

"No class action is proper unless all litigants are governed by the same legal rules." *Bridgestone*, 288 F.3d at 1015; *see also Gianino*, 846 F. Supp. 2d at 1103 ("Considering that the laws of 50 states will have to be applied in this case, the Court concludes that the common questions of law do not predominate …."). Here, as previously discussed, the CLRA cannot govern a nationwide class. *See supra* Part I.C.

Nor is this Plaintiffs' argument only fatal flaw as Plaintiffs cannot demonstrate that common issues predominate. Plaintiffs contend that their nationwide class claim "turns on

27

whether the No-Burst Lines suffer a design defect, what [Fluidmaster] knew and whether it failed to disclose material facts about the defects." Mem. at 30. Plaintiffs then assert, without further discussion: "All will be proven through common evidence and expert testimony." *Id.* This mere assertion, however, is insufficient. *Wal-Mart Stores Inc.*, 564 U.S. at 350; *Parko*, 739 F.3d at 1085. Indeed, Fluidmaster demonstrates in this brief how there is no common defect that can be attributed to all of the Connectors at issue.

Furthermore, an essential element of Plaintiffs' fraudulent omission claim under the CLRA is actual reliance. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (citing *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966 (2009) and *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)). To prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure "was a substantial factor in his decision." *Id.* "A plaintiff may do so by proving 'that, had the omitted information been disclosed, one would have been aware of it and behaved differently.'" *Id.* (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993)).

Plaintiffs' entire class-wide damages theory for their CLRA claim is based on the assumption that class members acquired Connectors in reliance on a ten-year warranty and the "No-Burst" label and thus paid more than they would have had they known the supposedly "true" facts that the Connector might not last ten years and might burst as a result of a design defect. But Plaintiffs offer no evidence of reliance on these "representations" by any putative class member. And reliance can only be inferred, if at all, when the omission of the purportedly "true" facts is material. *Id.* "An omission is material if a reasonable consumer 'would attach importance to its existence or nonexistence in determining his course of action in the transaction in question.'" *Id.* Such an inference of reliance is not justified where, as it is here, "many class members were never exposed to the allegedly misleading" representation. *Mazza*, 666 F.3d at

28

595-96 (finding certification improper where the class "almost certainly includes members who were not exposed to, and therefore could not have relied on, [the] allegedly misleading advertising material.").

Here, the evidence refutes any inference of reliance. Eleven of the fourteen named Plaintiffs never personally purchased their Connectors. For five of them, the Connector was already installed when they moved in (Smith, Hardwick, Elder, Sullivan, Kirsch). For another six, a plumber or friend purchased the part (Larson, Rhyne, Wyble, Hungerman, Eisen, Sanborn). Having never purchased a Connector, the named Plaintiffs cannot possibly have relied on the 10-year warranty or No-Burst "representations." Of the three named plaintiffs who did purchase a Connector, Naef did not know it was a Fluidmaster part until it ruptured (Naef Dep. 89:17-22), Rensel purchased it for his mother's home (Rensel Dep. 83:2-4, 88:25-90:6, 100:2-102:3), and Ellefson's connector lasted beyond the life of the warranty. *See* Mot. at 17. [34]

This inability to show reliance among even the named Plaintiffs demonstrates that for any claim under the CLRA (or an analogous consumer protection statute in another state), individualized proof will be required to show that each class member (1) made the decision to buy the Connector; (2) saw the allegedly incomplete label or warranty; and (3) relied on the label or warranty representation in deciding to purchase the Connector. These individualized inquiries into reliance overwhelm any common issues. [35]

---

[34] Plaintiffs' citation to *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 482 (C.D. Cal. 2012) is inapposite. Mem. at 30. *Tait* addressed a "fleeting[]" argument by the defendant, and stated "*Mazza* stands for the unremarkable proposition that it is difficult to certify a class where the class members are not all exposed to the same representations." *Tait*, 289 F.R.D. at 482. Here, many of the class members were not exposed to any representations *at all*, because the products were selected and purchased by third parties (*e.g.*, plumbers).

[35] Reliance is also a necessary element of a warranty claim in Arizona, precluding a finding of predominance for at least the putative Arizona state warranty subclass. *Flory v. Silvercrest Indus., Inc.*, 633 P.2d 383, 390 (Ariz. 1981) (no claim for breach of warranty where plaintiff could not have relied on warranty because it was not given to him).

Nor can Plaintiffs even maintain an "omission" theory of liability because Fluidmaster has no duty of disclosure. "When analyzing a . . . CLRA, or fraudulent concealment claim, California law instructs that a manufacturer's duty to consumers *is limited to its warranty*, unless a safety issue is present or there has been some affirmative misrepresentation." *Gray v. Toyota Motor Sales*, *U.S.A., Inc.*, 554 Fed. Appx. 608, 609 (9th Cir. 2014). As previously noted, Fluidmaster offered a limited warranty for repair or replacement. *See supra* III. No duty exists *unless* there is a safety issue. Here, Plaintiffs have proffered no evidence that any safety issue has been presented by the alleged bursting of Connectors. *See Wilson v. Hewlett-Packard* Co., 668 F.3d 1136, 1141 (9th Cir. 2012) (recognizing that there is no duty of disclosure in the context of a latent defect unless there is a safety issue, such as physical injury or safety concern).

### B. Common Issues of Fact Do Not Predominate

#### 1. Individualized Issues of Installation of Coupling Nut Preclude Certification

Individualized inquiry as to causation will also be necessary for all putative classes. Of the claims Fluidmaster has received (less than .0050% of Connectors sold), 95% of the failures are due to over-tightening. Palmer Report at ¶¶ 5, 22. [36] As Plaintiffs acknowledge, the products' labels have carried the warning "DO NOT OVERTIGHTEN" the Coupling Nut. Mem. at 8. The cause of failure will accordingly require individualized inquiry as to whether the failure was due to overtightening and not any alleged defect, and whether each individual claimant heeded the warning labels. [37]

---

[36] ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ Morgan Decl. ¶ 39.

[37] Though Plaintiffs propose a classwide damages theory based on the assumption that damage occurred at the point of purchase because the 10-year warranty and "No-Burst" "representations" were

Plaintiffs argue that, before 2004, Fluidmaster's instructional website "and certain labels" instructed the use of tools as part of tightening. Mem. at 8-9. Such argument requires further individualized inquiry into, for example, whether each class member: (1) saw the label or website; (2) used a tool in reliance on the label or website; (3) exceeded the recommended tightness; and (4) hired someone else to install the product. *See* Part II.B.1 (instructions to hand tighten only).

### 2. Individualized Issues Regarding Use of Products Preclude Certification

Individualized issues will also require adjudication with respect to the alleged defects in the hose body. Plaintiffs contend the hose body tended to rupture when exposed to certain chemicals that corroded the braided steel sheath. Mem. at 10-11. However, Plaintiffs concede that as early at 2002, Fluidmaster placed a "Do not expose to corrosive materials" warning on the label. Mem. at 14; *supra* Part II.B.1. Hose body claims will require inquiry into whether the class member heeded this warning.[38] *See* Def.'s Answer, Affirmative Defenses, No. 3-8, 12, 16, Dkt. No. 272. Indeed, misuse is a threshold issue requiring individualized determination. *See supra* n. 1.[39]

### 3. Individual Issues Predominate Plaintiffs' Warranty Sub-Classes

Plaintiffs seek to certify state warranty sub-classes of all persons who purchased a No-Burst line *or* who sustained damage from the failure of a No-Burst Line between April 24, 2004 and the date of certification. Mem. at 20. Plaintiffs' putative warranty sub-classes fare no better than their putative nationwide CLRA class for three reasons: (i) warranty claims require the same

---

purportedly untrue, they seek certification based on actual damages and individualized causation questions – *i.e.*, whether the purported "defect" actually caused the damage/breach of warranty.

[38] Plaintiffs assert that Fluidmaster "offered no warning regarding chlorine or household cleaning products." Mem. at 14. This assertion is directly contradicted by Plaintiffs' own proffered evidence. *See* Pls.' Ex. 6 at FM000001208 (expressly stating: "**WARNING**: Products containing highly corrosive chemicals or chlorine related products will contribute to the failure of stainless steel" ).

[39] The nature of this alleged defect – increased likelihood of rupturing after exposure to chemicals – varies across the Connectors at issue. *See supra* at Part II.B.1. Although a faucet connector may be exposed to nearby chemicals (*i.e.*, under the sink), Plaintiffs do not put forward any theory as to how such chemicals would contact an ice maker, washing machine or water heater Connector.

4822-0983-3012.v1

individualized inquiries regarding installation of coupling nuts and maintenance/use of the hose bodies discussed above (*i.e.*, overtightening, exposure to chlorine or other corrosive chemicals in violation of instructions) to determine whether improper use voided the warranty; (ii) the proposed sub-classes include persons who have no claim for breach of warranty because Fluidmaster did not offer a warranty between 2004 and 2007, requiring individualized inquiry into the date of purchase as well as the date of failure to determine if a warranty applies in the first instance; and (iii) misuse absolves Fluidmaster for any liability. *See supra* n. 1.

## V. PLAINTIFFS ARE NOT ENTITLED TO ISSUE CERTIFICATION BECAUSE INDIVIDUALIZED ISSUES PREDOMINATE OVER ANY COMMON QUESTIONS

Plaintiffs seek to certify negligence and strict liability state subclasses under Rule 23(c)(4) to establish liability for their negligence and strict liability claims. They also seek class treatment under this rule for 17 additional sub-issues. *See* Mot. at 34; Ex. 73. This effort fails. *See* Toto Decl., Ex. 23 (Response to Trial Plan). Plaintiffs cannot satisfy the Rule 23(b)(3) predominance requirement, and, in any event individualized inquiries preclude certification.

First, certifying sub-issues for class treatment under Rule 23(c)(4) is not a substitute for the predominance requirement under Rule 23(b)(3). Rather, "[t]he proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial." *Castano,* 84 F.3d at 745 n.21. As demonstrated above, Plaintiffs cannot establish predominance of common questions as to their CLRA and warranty causes of action. The same holds true for Plaintiffs' negligence and strict liability subclasses under Rule 23(b)(3) because the same individualized causation, defect, and contributory negligence questions predominate for these causes of action, precluding certification under 23(b)(3). Thus, Plaintiffs' failure to satisfy Rule 23(b)(3), dooms their request

4822-0983-3012.v1

for issue certification under Rule 23(c)(4).

Second, Plaintiffs improperly invoke Rule 23(c)(4) claiming that the case can be bifurcated "into a liability phase and a damages phase." Mem. at 34. But even assuming there was a common defect – highly unlikely given the various products and the infinitesimal failure of less than .005% – such a finding would not establish Fluidmaster's liability. Causation is an essential element of liability in the negligence and strict liability claims asserted by Plaintiffs, and proof of these elements will require individualized inquiries for each putative member of the class. *See, e.g., Board of Educ. v. A, C & S, Inc.,* 131 Ill.2d 428, 442-43 (1989) (actual injury caused by defect is necessary for strict products liability to attach, "not merely a risk of injury or damage…. to recover in strict products liability there must be a defective condition which is unreasonably dangerous, there must also be physical harm caused by that product.").[40]

Accordingly, this Court should summarily deny certification of any state subclass. *McCarter v. Kovitz Shifrin Nesbit,* No. 13 C 3909, 2015 WL 74069, at *6 (N.D. Ill. Jan. 5, 2015). Indeed, "[b]ecause of the need for individualized findings" in all of Plaintiffs putative classes, "little efficiency would be gained by certifying a class for only particular issues." *Clark v. Experian Info. Solutions, Inc.,* 256 Fed. Appx. 818, 822 (7th Cir. 2007). Plaintiffs' request for certification of particular issues under Rule 23(c)(4) should be denied in its entirety.

---

[40] Moreover, as set forth in detail in Fluidmaster's "Response to Plaintiffs' Proposed Trial Management Plan," there are various differences in the respective states' laws regarding proof of liability that will require individualized legal analysis as to each class member. Indeed, "[t]he Seventh Circuit Court of Appeals has warned repeatedly . . . against the certification of unwieldy multistate classes [because] the difficulties in applying the laws of numerous states to class claims defeat both predominance and manageability." *In re General Motors Corp.,* 241 F.R.D. 305, 324 (S.D. Ill. 2007) (citing, among others, *Bridgestone,* 288 F.3d at 1018-21; *Isaacs v. Sprint Corp.,* 261 F.3d 679, 681-82 (7th Cir. 2001)).

## CONCLUSION

Plaintiffs seek to certify a class of persons related to products which (1) Fluidmaster no longer manufactures and (2) have infinitesimal failure rates.  And in those very rare instances when these products have failed, insurance companies reimburse the injured -- and the insurance companies then have historically reached resolution with Fluidmaster – at about 6 cents on the dollar.  As explained above, Plaintiffs' motion for class certification, and indeed their entire action, is supported by neither law nor fact, and the present motion should be denied.

Dated:  June 29, 2016                                       Respectfully submitted,


/s/ Sarkis Khachatryan
Mark Litvack
Kimberly Buffington
Mariah Brandt
Carolyn Toto
Sarkis Khachatryan
**PILLSBURY WINTHROP SHAW**
**PITTMAN LLP**
725 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
Tel.: 213.488-7100
Fax: 213.629-1033
Email: mark.litvack@pillsburylaw.com
kbuffington@pillsburylaw.com
Mariah.brandt@pillsburylaw.com
carolyn.toto@pillsburylaw.com
sarkis.khachatryan@pillsburylaw.com

Michael Carroll
**CARROLL & CARROLL, P.C.**
30800 Rancho Viejo Road
San Juan Capistrano, CA 92675
Tel.  949.340-7375
Fax: 949.340-7379
Email: mcarroll@carrollpc.com

34

4822-0983-3012.v1