**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE: FLUIDMASTER, INC., WATER** | ) | **Case No. 1:14-cv-05696** |
| **CONNECTOR COMPONENTS** | ) | **MDL No. 2575** |
| **PRODUCTS LIABILITY LITIGATION** | ) | **Magistrate Judge Jeffrey T. Gilbert** |

**MEMORANDUM OPINION AND ORDER**

Defendant Fluidmaster, Inc., ("Fluidmaster") maintains that approximately 10,000 documents requested by the purported plaintiff class in this case ("Plaintiffs") are protected from production by the attorney-client privilege and the work product doctrine.  [ECF No. 328-3], ¶ 4. According to Fluidmaster, the small number of documents being withheld—at least in comparison to the roughly 180,000 documents it has produced, which total over 600,000 pages, *id.* ¶ 2—shows that the company has "maintained a conservative and valid approach to privilege."  [ECF No. 328], at 1.  Plaintiffs have a different perspective, claiming that Fluidmaster has asserted privileges on a "sweeping basis" and provided seriously deficient privilege logs that do not support its assertions.  [ECF No. 343], at 1.  After months of meeting and conferring that narrowed but did not completely resolve the privilege dispute, Fluidmaster filed a Motion for Protective Order Preventing Disclosure of Its Attorney-Client Privileged and/or Protected Work Product Documents.  [ECF No. 328].

Before considering the merits of Fluidmaster's motion, the Court first must address what documents are encompassed by that motion.  Plaintiffs say Fluidmaster is seeking "a protective order over approximately 10,000 documents"—*i.e.*, all of the documents that Fluidmaster has withheld as privileged.  [ECF No. 343], at 1.  Fluidmaster says it is seeking "a protective order preventing disclosure of privileged documents *Plaintiffs claim should be produced*."  [ECF No. 328], at 1 (emphasis added).  In its opening brief filed in support of its motion, Fluidmaster

identifies by Bates-number 112 documents that it says Plaintiffs are seeking and it is withholding. *Id.* at 4. In addition, Fluidmaster has provided the Court with excerpts from its privilege log that include the 112 documents identified by Bates-number in its opening brief and just a handful of other documents. [ECF No. 328-18]. The Court interprets this to mean that, after the meet and confer process, Plaintiffs are not disputing Fluidmaster's invocation of the attorney-client privilege or work product doctrine as to the vast majority of the documents Fluidmaster is withholding from production on those grounds. If a dispute does exist as to these other documents, neither party has asked the Court to resolve it. There is nothing in the record before the Court on Fluidmaster's motion that indicates Plaintiffs are claiming, or ever have claimed, that Fluidmaster should produce every single document it is withholding.

For these reasons, the Court will address the request for relief in the motion Fluidmaster actually filed. The Court cannot address privilege issues with respect to documents not among the 112 listed on Fluidmaster's excerpted privilege log provided to the Court. In other words, the Court will confine itself to the dispute presented by Fluidmaster's Motion for Protective Order and not weigh into the hint of a larger dispute without an adequate record upon which to do so.

## I. LEGAL STANDARD

### A. Protective Order

Federal Rule of Civil Procedure 26(c) permits a party to move for a protective order forbidding disclosure or discovery of certain materials. FED. R. CIV. P. 26(c). The court, in turn, may grant such a motion where there is "good cause" to enter the protective order. *Clark v. City of Chicago*, 2010 WL 9941375, at *1 (N.D. Ill. Oct. 13, 2010) (quoting FED. R. CIV. P. 26(c)). The movant bears a heavy burden to prove, through specific facts, that good cause exists. *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015);

*Chicago Mercantile Exch., Inc. v. Tech. Research Grp., LLC*, 276 F.R.D. 237, 241 (N.D. Ill. 2011).  Ultimately, the court must exercise its sound discretion to determine whether a protective order should be entered and, if so, what degree of protection is appropriate.  *Nieves v. OPA, Inc.*, 948 F. Supp. 2d 887, 891 (N.D. Ill. 2013); *State Farm Fire & Cas. Co. v. Nokes*, 263 F.R.D. 518, 521 (N.D. Ind. 2009); *Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003).

**B.      The California Attorney-Client Privilege**

The parties agree that California law governs the attorney-client privilege issues now before the Court.  *See* FED. R. EVID. 501.  Under California law, the attorney-client privilege is a product of statute.  *Fay Ave. Properties, LLC v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 2738682, at *5 (S.D. Cal. June 17, 2014).  Specifically, § 954 of the California Evidence Code "confers a privilege on the client 'to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer.'"  *Ivy Hotel San Diego, LLC v. Houston Cas. Co.*, 2011 WL 4914941, at *3 (S.D. Cal. Oct. 17, 2011) (quoting CAL. EVID. CODE § 954).

In determining whether the attorney-client privilege applies, California law employs a shifting burden approach.  Initially, the party claiming the privilege must establish "'the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship.'"  *DP Pham, LLC v. Cheadle*, 200 Cal. Rptr. 3d 937, 946 (Cal. Ct. App. 2016) (quoting *Costco Wholesale Corp. v. Superior Court*, 219 P.3d 736, 741 (Cal. 2009)); *see also Fay*, 2014 WL 2738682, at *5.  "To evaluate whether the party claiming the privilege has made a prima facie showing, the focus is on the *purpose of the relationship* between the parties to a communication."  *League of California Cities v. Superior Court*, 194 Cal. Rptr. 3d 444, 453 (Cal. Ct. App. 2015).  "'[I]t is not the dominant purpose of a particular communication that dictates whether the attorney-client privilege is applicable; rather the issue is

what *was the dominant purpose of the relationship*.'" *McAdam v. State Nat. Ins. Co.*, 15 F. Supp. 3d 1009, 1015 (S.D. Cal. 2014) (quoting *Cason v. Federated Life Ins. Co.*, 2011 WL 1807427, at *2 (N.D. Cal. Oct. 17, 2011)); *see also Fay*, 2014 WL 2738682, at *7. Thus, where a party makes the requisite showing as to the relationship, "then all documents and communications are protected by the privilege without the necessity of having to make individualized showings as to each communication or document." *Fay Ave. Properties, LLC v. Travelers Prop. & Cas. Co. of Am.*, 2014 WL 1333669, at *11 (S.D. Cal. Apr. 2, 2014), *objections overruled sub nom. Fay*, 2014 WL 2738682.

Once the party claiming the attorney-client privilege makes the prima facie showing described above, "'the communication is presumed to have been made in confidence.'" *Fay*, 2014 WL 2738682, at *5 (quoting *Costco*, 219 P.3d at 741); *see also DP Pham*, 200 Cal. Rptr. 3d at 946. Then, "'the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply.'" *Fay*, 2014 WL 2738682, at *5 (quoting *Costco*, 219 P.3d at 741); *see also DP Pham*, 200 Cal. Rptr. 3d at 946.

## C.    The Federal Work Product Doctrine

The federal work product doctrine, which finds its origins in *Hickman v. Taylor*, 329 U.S. 495 (1947), is codified in Federal Rule of Civil Procedure 26(b)(3). *Abbott Labs. v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 405 (N.D. Ill. 2001); *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 276 (N.D. Ill. 1997). Rule 26 "protects *all* 'documents and tangible things that are prepared in anticipation of litigation'" by or for a party or its representative for the purpose of analyzing or preparing the party's case. *Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1025 (7th Cir. 2012) (quoting FED. R. CIV. P. 26(b)(3)(A)); *see also The*

*Manitowoc Co., Inc. v. Kachmer*, 2016 WL 2644857, at *4 (N.D. Ill. May 10, 2016); *Patrick v. City of Chicago*, 111 F. Supp. 3d 909, 915 (N.D. Ill. 2015); *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 734 (N.D. Ill. 2014).

The work product doctrine provides different degrees of protection for so-called "fact" and "opinion" work product. *Appleton Papers*, 702 F.3d at 1025. Fact work product "'consists of factual material'" while opinion work product "'comprises the mental impressions, conclusions, opinions, or legal theories of an attorney or a party's representative.'" *Timmermann's Ranch & Saddle Shop, Inc. v. Pace*, 2016 WL 1181792, at *2 (N.D. Ill. Mar. 28, 2016) (quoting *United States ex. Rel. Yannacopolous v. Gen'l Dynamics*, 231 F.R.D. 387, 385 (N.D. Ill. 2005)). Fact work product is discoverable "in the rare case" where a party demonstrates that he has a substantial need for the materials and that it would be exceedingly difficult to obtain the information through other means. *Appleton Papers*, 702 F.3d at 1022, 1025; *see also Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 321 (N.D. Ill. 2008). But opinion work product remains protected even where a party makes such a showing. *Appleton Papers*, 702 F.3d at 1023; *Beverly v. Watson*, 2015 WL 5117043, at *2 (N.D. Ill. Aug. 28, 2015). In either case, the party asserting that some document or tangible thing is protected by the work product doctrine bears the burden of showing that the doctrine applies. *Appleton Papers*, 702 F.3d at 1023; *Hamdan v. Indiana Univ. Health N., LLC*, 2014 WL 2881551, at *2 (S.D. Ind. June 24, 2014).

## II. DISCUSSION

Fluidmaster identifies six categories of documents in dispute and provides the Bates-numbers for the documents it groups into these categories. [ECF No. 328], at 4. It asserts that almost all of the documents in these categories are protected by the attorney-client privilege and

that many are protected by the work product doctrine.  With varying degrees of specificity, the parties confine their arguments to these six categories of documents.  The Court will address each category of documents in turn as best that it can based upon the parties' arguments.

## A.      FMPRIV_00002-00005: The Lichtman Reports[1]

The first category of documents identified by Fluidmaster consists of reports regarding two witness interviews.  *Id.*  Joanne Lichtman, a litigation attorney at the Howrey law firm, worked as one of Fluidmaster's outside counsel on various product liability lawsuits, and she interviewed some of Fluidmaster's employees.  [ECF No. 328-2], ¶ 11.  The subject matter covered during these interviews is not clear from the record now before the Court.  Regardless, after Lichtman's interviews with Ken Wogomon (Fluidmaster's Manager of Quality) and Chris Coppock (Fluidmaster's R&D Manager), "counsel" prepared "report[s]" about them.  [ECF No. 328-18], at 2, entries FMPRIV_00002-00005.  It is not clear from the privilege log whether Lichtman or some other attorney prepared the reports.  Fluidmaster argues these reports, which will be referred to as "the Lichtman Reports," are protected by the attorney-client privilege. Fluidmaster's vague description of these documents as "information prepared by counsel re: interview by Joanne Lichtman (Outside Counsel) of [Fluidmaster employees]" appears to bring the documents within the attorney-client privilege under California law at least in terms of how they were created and the purpose of the communications.

---

[1] Fluidmaster identifies the relevant documents as those Bates-stamped FMPRIV_00001-00005.  But FMPRIV_00001 is described on Fluidmaster's privilege log as "Non-Responsive document."  [ECF No. 328-18], at 2.  Plaintiffs identify the documents in this category as those Bates-stamped FMPRIV_00002-00006.  Plaintiffs say that Fluidmaster told them during the meet and confer process that FMPRIV_00002-00003 and FMPRV_00004-00005 are identical copies of each other.  Each of these documents is described on Fluidmaster's privilege log as information prepared by counsel regarding an interview of a Fluidmaster employee.  *Id.*  The entry for FMPRIV_00006 describes the document as information requested by counsel in preparation for interviews.  *Id.*  Fluidmaster includes this document in the second category of documents it is withholding.  Plaintiffs do not specifically address this document in their argument as to the documents in category one.  Therefore, the Court will address this document in its discussion of category two documents below.

The dominant purpose of Lichtman's relationship with Fluidmaster appears to have been attorney-client. There is no indication that her relationship had any other purpose. And Plaintiffs do not contend otherwise. Also, Plaintiffs do not contest the proposition that Lichtman's communications with Wogomon and Coppock constitute communications with Lichtman's "client." *See Zurich Am. Ins. Co. v. Superior Court*, 66 Cal. Rptr. 3d 833, 841 (Cal. Ct. App. 2007) ("[T]he attorney-client privilege may extend to communications involving middle- and lower-level employees."); *see also Kandel v. Brother Int'l Corp.*, 683 F. Supp. 2d 1076, 1083 (C.D. Cal. 2010).

Plaintiffs instead argue that Fluidmaster has not made the requisite preliminary showing as to privilege because the Lichtman Reports discuss only factual issues. [ECF No. 343], at 12-13 (citing [ECF No. 328-12], at 2, a letter that Fluidmaster filed in support of its motion in which one of Fluidmaster's attorneys characterizes Lichtman's interviews of Fluidmaster employees as "factual investigation[s]"). According to Plaintiffs, the attorney-client privilege under California law only applies to communications that include a legal opinion formed and the advice given by a lawyer. Therefore, reports about factual investigations, Plaintiffs assert, are not covered.

Plaintiffs' argument is premised on a misreading of § 952 of the California Code of Evidence, which defines "confidential communication." That provision provides as follows: "'confidential communication between client and lawyer' *means* information transmitted between a client and his or her lawyer in the course of that relationship and in confidence . . ., and *includes* a legal opinion formed and the advice given by the lawyer in the course of that relationship." CAL. EVID. CODE § 952 (emphasis added). Because of the use of the conjunctive "and," the last clause is not a restrictive modifier of "information transmitted." If the last clause of this definition started with "that" instead of "and," then perhaps Plaintiffs' reading could be

correct.  But that is not how the statute is written.  Instead, "confidential communication" is defined to *mean* information transmitted, whether or not that information is a legal opinion or advice.  Then, the last clause merely "uses 'legal opinion' to specify one type of information protected."  *People v. Bolden*, 160 Cal. Rptr. 268, 268 (Cal. Ct. App. 1979).

This reading of § 952 is confirmed by California courts' interpretation of "confidential communication," a term which they have explained should be "broadly construed."  *Palmer v. Superior Court*, 180 Cal. Rptr. 3d 620, 628 (Cal. Ct. App. 2014).  California's attorney-client privilege simply does not differentiate "between 'factual' and 'legal' information."  *DP Pham*, 200 Cal. Rptr. 3d at 945.[2]  The "privilege equally attaches to both 'legal' and 'factual' information or advice exchanged between the attorney and client."  *Larsen v. Coldwell Banker Real Estate Corp.*, 2012 WL 359466, at *5 (C.D. Cal. Feb. 2, 2012).  In fact, the privilege may extend to "communications that merely transmit documents," even if those documents are publically available.  *In re Superior Nat. Ins. Gr.*, 518 B.R. 562, 569 (Bankr. C.D. Cal. 2014); *DP Pham*, 200 Cal. Rptr. 3d at 945.  All of this means that the privilege protects the transmission of information "regardless of their content."  *DP Pham*, 200 Cal. Rptr. 3d at 948; *see also id.* at 947 (noting that the attorney-client analysis does not involve an inquiry into "the nature of the communications").

In attempting to rebut this case law, Plaintiffs hang their hat on a concurrence in *Costco Wholesale Corporation v. Superior Court*, 219 P.3d 736 (Cal. 2009).  In that case, the concurring judge stated that, under § 952, "the information transmitted between the lawyer and the client must be similar in nature to the enumerated examples—namely, the lawyer's legal opinion or

---

[2] *See also Fay*, 2014 WL 2738682, at *7 (explaining that a party asserting the privilege need not identify specific legal advice that the attorney gave or specific legal issues that the attorney addressed); *Mitchell v. Superior Court*, 691 P.2d 642, 642 (Cal. 1984) ("Real parties' further contention that their inquiries about warnings to Ms. Mitchell from her attorney are not privileged since they involve 'factual information' as opposed to 'legal advice' must similarly be rejected.").

advice." *Id.* at 748 (George, J., concurring). This statement, however, is inconsistent with how the controlling opinion characterized the privilege. The majority described one of the California Supreme Court's previous holdings in which the court found that certain materials were protected even though they "might be described as factual matter rather than legal advice." *Id.* at 742 (majority opinion). The majority then quoted that earlier opinion for the proposition that "[n] either the statutes articulating the attorney-client privilege nor the cases which have interpreted it make any differentiation between 'factual' and 'legal' information." *Id.* Therefore, Plaintiffs' reliance on the concurring opinion in *Costco* is misplaced.

Plaintiffs also argue that Fluidmaster has waived the attorney-client privilege with respect to the Lichtman Reports. This argument is based on the fact that Fluidmaster did not assert the attorney-client privilege with respect to these documents in its August 26, 2015 privilege log. Instead, Fluidmaster relied solely on the work product doctrine in that privilege log for these documents. [ECF No. 343-4], at 4.

Although California law governs the existence and the scope of the attorney-client privilege in this case, Plaintiffs contend that federal law governs "issues of waiver." [ECF No. 343], at 11. The case cited by Plaintiffs for this proposition does not go so far, and the Court is not convinced that federal law governs all issues related to waiver in this context. Regardless, Plaintiffs' argument is not really about waiver in the first instance, and the Court doubts Plaintiffs, if pressed on the issue, could show Fluidmaster intentionally relinquished a known right with knowledge of the facts so as to constitute a waiver under California law. *See F.D.I.C. v. Fid. & Deposit Co. of Maryland*, 196 F.R.D. 375, 380 (S.D. Cal. 2000) ("Under California law, waiver of the attorney-client privilege depends entirely on whether the client provided knowing and voluntary consent to the disclosure."). Instead, Plaintiffs really are contending that

Fluidmaster violated Federal Rule of Civil Procedure 26 by not raising the attorney-client privilege objection earlier and that this failure justifies a sanction, which, according to Plaintiffs, should be Court-ordered waiver. Federal law clearly controls whether and what sanctions are appropriate when a party violates the Federal Rules of Civil Procedure.

Under Federal Rule of Civil Procedure 26(b)(5), a party withholding a document on the basis of a privilege must "expressly make the claim." FED. R. CIV. P. 26(b)(5)(A)(i). "The failure to provide the requesting party with a sufficient and timely privilege log 'may result in a waiver of any protection from discovery.'" *Executive Mgmt. Servs., Inc. v. Fifth Third Bank*, 309 F.R.D. 455, 464 (S.D. Ind. 2015) (quoting *Miller v. City of Plymouth*, 2011 WL 1740154, at *4 (N.D. Ind. May 5, 2011)). "An order that privileged documents be disclosed as a sanction is appropriate, however, only if the party that authored the log has displayed willfulness, bad faith or fault." *Muro v. Target Corp.*, 250 F.R.D. 350, 365 (N.D. Ill. 2007), *aff'd*, 580 F.3d 485 (7th Cir. 2009).

The Court is not convinced that Fluidmaster did not act "timely" in asserting the attorney-client privilege. More importantly, however, on the record now before the Court, there is no basis for concluding that Fluidmaster acted willfully, in bad faith, or with fault by not raising the attorney-client privilege with respect to these documents in its August 2015 privilege log. Even if Fluidmaster changed its mind, that would not be enough to justify the sanction Plaintiffs seek at this relatively early stage of this litigation. Further, Fluidmaster asserted the attorney-client privilege with respect to the Lichtman Reports when responding to Plaintiffs' request for production of documents and asserted the privilege in its revised privilege log, which was served several months after the August 2015 privilege log. In other words, Fluidmaster was not tardy in correcting or supplementing the record and no prejudice resulted to Plaintiffs because of

Fluidmaster's initial oversight or position. The mere fact that Fluidmaster listed the wrong or a different privilege in its first privilege log should not result in the drastic sanction of compelling the production of otherwise privileged material.

Plaintiffs raise one final issue with Fluidmaster's privilege log with respect to the Lichtman Reports, however, that potentially has more traction. Plaintiffs correctly note that, while Fluidmaster listed Lichtman as "Legal Personnel in Communication" and described the documents at issue as having been "prepared by counsel," Fluidmaster did not put any information in the "From," "To," "CC," and "BCC" columns of its privilege log when describing documents FMPRIV_00002-00005. Plaintiffs claim that this lack of information renders the privilege log deficient and impedes their ability to assess whether any privilege may have been waived. Technically, Plaintiffs are correct. Fluidmaster does not address this issue in its reply brief. Based on context, the Court speculates that Lichtman or someone working with her or under her direction prepared interview memos addressed to "the File" or something similar after they spoke with Fluidmaster's employees. But that is conjecture. And, as the Court noted earlier, Fluidmaster's description of these documents on its privilege log is a bit vague and only minimally sufficient to invoke the attorney-client privilege in the first place. Therefore, on the present record, Plaintiffs are correct that Fluidmaster has not met its burden to show these documents are privileged against production. And, for example, if the reports were created as Fluidmaster says they were but were shared with someone not within the attorney-client privilege, then the privilege potentially would be waived and Plaintiffs would be entitled to see them. There is no way to know that from the entries on the log as it now stands.

Plaintiffs contend that these and other problems with Fluidmaster's privilege log addressed below justify requiring Fluidmaster to produce all of the documents with deficient

entries. The Court recognizes that such a sanction may be appropriate in certain instances. *Schleicher v. Wendt*, 2010 WL 1948218, at *2 (S.D. Ind. May 14, 2010). But, as noted above, "courts reserve the sanction of waiver for situations in which the author of the privilege log displays willfulness, bad faith, or fault." *Id.* A "blanket waiver is not a favored remedy for technical inadequacies in a privilege log." *Muro*, 250 F.R.D. at 360. Instead, when faced with technical deficiencies, courts typically "permit a party to revise their privilege log." *Jorling v. Anthem, Inc.*, 2011 WL 3759189, at *3 (S.D. Ind. Aug. 25, 2011). That is the way this Court, exercising its discretion, will proceed here.

Therefore, Fluidmaster's Motion for Protective Order will be denied as to the Lichtman Reports unless Fluidmaster cures the deficiency with its privilege log by November 22, 2016, which is 14 days from the date of this Memorandum Opinion and Order. If it does not do so, then the documents must be produced to Plaintiffs. If Fluidmaster cures this deficiency and none other arises in the process of its doing so, then its motion will be granted. If Fluidmaster wants to submit the identified documents to the Court for *in camera* review, it should do so within the same time period.[3] In the meantime, Fluidmaster's motion will remain under advisement in this

_____

[3] The Court is giving Fluidmaster the option to submit the documents for *in camera* review but not requiring that it do so at this time. On the present record, it is not clear that the Court needs to review these documents *in camera* to determine whether they are covered by the attorney-client privilege. Earlier in this case, Fluidmaster took the position that it could not be forced to submit documents for *in camera* review under California law. *See* Joint Motion to Resolve Whether This Court Can Conduct an In Camera Review of Documents Claimed to be Attorney-Client Privileged [ECF No. 267]. At a hearing on that joint motion on May 4, 2016, the Court expressed doubt as to whether Fluidmaster was correct that California law applied to the question of whether a federal court could conduct an *in camera* review of documents claimed to be privileged and it concluded that federal law, not California law, applied to that issue. Regardless, though, the Court found that the question of whether any documents were covered by the attorney-client privilege was premature at that time, before the parties had briefed the presently pending motion. [ECF No. 323]. Whether or not Fluidmaster is correct as to the Court's ability to compel it to submit documents being withheld on a claim of privilege for *in camera* review, the Court is giving Fluidmaster the opportunity to do so here if it wants and if it believes that would advance its cause. If Fluidmaster does not want to do so with respect to these particular documents, then it is not obligated to do so at this time. The Court, though, reserves the right to order that any documents that Fluidmaster is withholding must be produced for *in camera* review if it believes it needs to review any documents *in*

respect.  A hearing to address the status of this and other similar issues concerning the

sufficiency of Fluidmaster's showing in support of its Motion for Protective Order identified

later in this Memorandum Opinion and Order is set for November 30, 2016, at 10:00 a.m.  The

Court can decide what, if any, next steps need to be taken or further orders need to be entered at

that time.

**B.      FMPRIV_00006; FM000127662-000127663, 000127673-000127674, 00012687-00012688: Fluidmaster Employees Gathering Information at the Direction of Counsel**

The documents in Fluidmaster's second category of documents being withheld are

described as communications providing information gathered by Fluidmaster's employees at the

direction of counsel.  [ECF No. 328], at 4.  One document in this category is an email from Bill

DeKeyser, who works for Fluidmaster, to Michael Morgan ("Morgan"), who is Fluidmaster's

Senior Manager of Fluidmaster's Global Risk Management Department.  [ECF No. 328-18], at

2, entry FMPRIV_00006.  Joanne Licthman of Howrey is identified in the description of this

document as "Legal Personnel in Communication."  *Id.*  The other documents in this second

category are emails from and to various employees of Fluidmaster that contain information

regarding discovery requests and are described as "discussing legal advice."  *Id.* at 12, entries

FM000127662-000127663, 000127673-000127674, 00012687-00012688.  Every email either

was sent directly to or CC'ed to attorneys—specifically, outside litigation counsel Jennifer

Tricker and Jill Ackerman from Baird Holm LLP and outside litigation counsel Ernest Weiss

from Klinedinst PC.  *Id.*  Fluidmaster claims that all of these documents are protected by the

attorney-client privilege and often the work product doctrine.

---

*camera* to rule on Fluidmaster's request for a protective order and/or that Plaintiffs would be prejudiced without that review.

Plaintiffs do not address these documents in their brief in any detail other than to say that Fluidmaster waived its right to assert the attorney-client privilege for the document labeled FMPRIV_00006 because it originally rested on the work product doctrine for that document, an argument the Court dealt with in the preceding section of this Memorandum Opinion and Order. In its brief, Fluidmaster attempts to pre-emptively refute an argument supposedly made by Plaintiffs about some of these documents during the meet-and-confer process. [ECF No. 328], at 11. Because Plaintiffs have not raised that argument here, the Court need not address it. Under these circumstances, the Court will address these documents only briefly.

The Court is not able to determine what the reference to "Legal Personnel in Communication" means with respect to FMPRIV_00006. Because neither individual listed in the "From" and "To" columns is an attorney, that means the Court cannot assess whether that document is a communication between an attorney and a client. Fluidmaster's description of that document also is unhelpfully vague and poorly written: "Information requested by counsel re: product failure analysis requested by Joanne Lichtman in preparation for interviews, and in furtherance of obtaining legal advice." [ECF No. 328-18], at 2. Fluidmaster does little to explain why FMPRIV_00006 is protected by the attorney-client privilege. *See* [ECF No. 328], at 11-12.

All of the other emails, though, are different. They were sent to attorneys by employees of Fluidmaster. All of those attorneys had relationships with Fluidmaster that were predominately, if not entirely, attorney-client. These communications appear to have occurred within the course of those relationships and all related to legal matters. That is enough to make the required preliminary showing under California law, and Plaintiffs have not rebutted that

showing. Therefore, these emails (other than FMPRIV_00006) are protected by the attorney-client privilege.

That leaves the work product doctrine. Fluidmaster invokes the work product doctrine as to FM000127662-000127663, 000127673-000127674, 00012687-00012688. All of these documents were prepared by Fluidmaster employees. They apparently contain information necessary to respond to discovery requests for cases in active litigation.[4] And Fluidmaster also says they "discuss[ ] legal advice." [ECF No. 328-18], at 12. That means the emails were prepared in anticipation of or during the course of litigation for the purpose of analyzing or preparing Fluidmaster's case. Therefore, these emails also are protected by the work product doctrine.

For all of these reasons, Fluidmaster's motion is granted with respect to FM000127662-000127663, 000127673-000127674, and 00012687-00012688 and will be denied as to FMPRIV_00006, unless Fluidmaster can supplement its privilege log and make the required showing as to this document. If Fluidmaster cannot do so, then the document must be produced to Plaintiffs. Fluidmaster has until November 22, 2016, to supplement its privilege log in this respect or to submit the document for *in camera* review in accordance with the same process and for the same reasons as explained earlier in this Memorandum Opinion and Order.

---

[4] The privilege log itself does not state that the cases were in active litigation. However, that is a reasonable inference. Moreover, Fluidmaster represents that the cases were in active litigation and Plaintiffs do not dispute that assertion.

**C.    FMPRIV_00429-00506: Spreadsheets and Charts Created by or for Counsel, or, in Plaintiffs' Words, Aggregated Claims Data[5]**

The third category of documents identified by Fluidmaster consists of spreadsheets, charts, and presentations created by, "under the direction of," or for Fluidmaster's attorneys. These documents mostly relate to the status of claims, summaries of claims, analyses of claim data files, and aggregate data regarding product liability claims. *See* [ECF No. 328-18], at 4-12, entries FMPRIV_00429-00506. All of the documents for which there is a "From" and "To" listed on the privilege log list "Howrey" in the "From" column and "Fluidmaster" in the "To" column, *id.* at 4-11, entries FMPRIV_00431-00436, 00439-00441, 00450-00500, except two documents that were sent from Joanne Lichtman at Howrey or "CAPANALYSIS c/o Joanne Lichtman" to Fluidmaster, *id.* at 4, entries FMPRIV_00429-00430. There is a small subset of entries on the privilege log that do not include both a "From" and a "To." *Id.* at 4-5, 11-12, entries FMPRIV_00437-00438 (Howrey in the "From" column but no entry in the "To" column), 00442-00449, 00501-00506 (no entries in "From" or "To" columns). Fluidmaster asserts that all of these documents are protected by the attorney-client privilege and the work product doctrine.

The Court will first address the attorney-client privilege. For almost all of these documents, Fluidmaster states that they were sent to Fluidmaster by Howrey, a law firm whose dominant and possibly only relationship with Fluidmaster was attorney-client, or by Joanne Lichtman, a Howrey attorney. Fluidmaster says most of the documents were prepared by counsel and/or relate to litigation strategy. Although Fluidmaster only lists "Howrey" in the

---

[5] Plaintiffs list the relevant documents as FMPRIV_00429-00590. [ECF No. 343], at 2. But Fluidmaster stops at FMRPIV_00506. [ECF No. 328], at 4. Because Fluidmaster, as the movant, defines the scope of the protective order it is seeking, the Court will consider only whether FMPRIV_00429-00506 are privileged. Presumably, the other documents identified by Plaintiffs have been produced by Fluidmaster or they are no longer in dispute. If they have not been produced and Plaintiffs have not withdrawn their request for those documents, then they must be produced within 15 days of the date of this Order, or by November 23, 2016, because Fluidmaster did not seek a protective order that would justify not producing them.

"From" column for many of these documents, without identifying any specific attorney, documents that originated with Howrey probably were created by an attorney (or someone working at an attorney's direction) in an attorney-client relationship with Fluidmaster within the meaning of California law under these circumstances. Still, Fluidmaster should identify the attorney or Howrey employee who created the documents so that the Court and Plaintiffs can evaluate properly whether the attorney-client privilege applies to those documents. And Fluidmaster has not made the preliminary showing required to assert the attorney-client privilege with respect to the document Bates-numbered FMPRIV_00429 because the Court does not know and Fluidmaster does not explain why a communication from CAPANALYSIS c/o Joanne Lichtman is covered by the attorney-client privilege.

There also are other problems, which Plaintiffs identify in their brief, with Fluidmaster's privilege log that must be addressed before the Court can determine whether these documents are protected by the attorney-client privilege. As mentioned above, the "From" and/or "To" columns for some documents lack any entry. *Id.* at 4-5, 11-12, entries FMPRIV_00437-00438, 00442-00449, 00501-00506. FMPRIV_00437 and 00438 list "Howrey" in "From" but do not list anybody in the "To" column *Id.* at 4. FMRPIV_00449 has no "From" or "To" entry but lists "Howrey" in a column titled "Legal Personnel in Communication," which is not explained either in the privilege log or Fluidmaster's briefs. *Id.* at 5. FMPRIV_00442-00448 have nothing filled in the "From," "To," or "Legal Personnel in Communication" columns. *Id.* Likewise, the same three columns are blank with respect to FMPRIV_00501-00506. It is not clear whether the documents were prepared by counsel or simply forwarded by counsel to Fluidmaster and, while that ultimately might not be dispositive, it is relevant information. The subject matter of the documents likewise is vague and unclear. In addition, the description of the FMPRIV_00501-

00506 documents reference a presentation "prepared by Joanne Lichtman" but it seems that the document that Fluidmaster claims is privileged is not the presentation itself but, rather, spreadsheets and charts related to that presentation.

Because these entries do not contain the information necessary to determine who was involved in the relevant communications, the Court cannot properly assess whether they constitute communications between Fluidmaster and an attorney in an attorney-client relationship with it. *See Parvati Corp. v. City of Oak Forest*, 2010 WL 4792649, at *2 (N.D. Ill. Nov. 18, 2010) ("A privilege log must identify the following information for each separate document: . . . the author and recipients, including their capacities . . . ."); *see also Muro*, 250 F.R.D. at 364. Further, the lack of this information impairs Plaintiffs' ability to assess whether any privilege applies or has been waived.

In addition, Fluidmaster's description of these documents on its privilege log is unhelpfully vague. Its descriptions vary from "Information prepared by counsel re: Aggregate data relating to product liability claims" (FMPRIV_00437-00438), to "Document prepared in anticipation of arbitration or litigation re: Aggregate data relating to product liability claims for litigation strategy from outside counsel at Howrey" (FMPRIV_00442-00449), to "Document prepared in anticipation of arbitration or litigation re: Work product presentation prepared by Joanne Lichtman (Outside Counsel) of Howrey providing status and summary of claims; Aggregate data relating to product liability claims for use in litigation strategy" (FMPRIV_00501-00506). [ECF No. 32-18]. Neither the Court nor Plaintiffs can draw an accurate picture of these documents or what they may contain based on these descriptions. Plaintiffs argue that these documents are nothing more than aggregate claims data that are not protected from production in any event. Fluidmaster, on the other hand, argues that even if the

documents contain aggregate claims data, they still are protected by the attorney-client privilege and work product doctrine because of the way in which the documents were created and communicated to counsel. The Court does not have enough information on this record to determine which party has the better argument.

Plaintiffs say the only way the Court can decide whether these documents should be produced is by reviewing them *in camera*. That very well may be true. A first step, though, is for Fluidmaster to provide the basic information that is missing from its privilege log in terms of who created the documents and to whom they were communicated, along with a better description of what the documents contain and the context in which the were created. As noted above, Fluidmaster also has the option of producing the documents for *in camera* review if it believes that would advance its cause. In the Court's view, however, production of a large stack of spreadsheets for the Court's review *in camera* without additional information about context that would assist the Court and Plaintiffs in evaluating the applicability of any claimed privilege would not be helpful in and of itself. It may be, however, that Plaintiffs are correct that the only way the Court properly can evaluate these documents is by reviewing them *in camera* and the Court can cross that bridge if and when necessary.

Accordingly, if Fluidmaster can correct the deficiencies noted with respect to its privilege log, it should do so by November 22, 2016. If Fluidmaster wants to submit the documents for *in camera* review, it should do so within the same period of time. If Fluidmaster cannot remedy the problems noted above, its motion will be denied in this respect and the documents must be produced to Plaintiffs. If any additional information submitted by Fluidmaster raises more questions, then the Court can deal with those issues after it and Plaintiffs receive the additional

information.  The Court will address the status of these documents at the hearing set for November 30, 2016.

Plaintiffs contend that, even if the deficiencies in Fluidmaster's privilege log are remedied, the documents still are not protected by the attorney-client privilege for two reasons. In a single sentence, Plaintiffs state that "to the extent" these documents were generated by "Fluidmaster's Risk Management Department on a routine report, or routine format of reporting," they are not privileged.  [ECF No. 343], at 3.  Plaintiffs do not identify any specific document that they contend is a routine business report.  And they do not provide a reason for concluding that any listed document is such a report.

Further, the document descriptions in the privilege log do not appear to indicate they are routine business records.  The privilege log describes every document as falling into at least one of the following categories: (1) it was prepared by counsel (FMPRIV_00431, 00434, 00437-00440, 00450-00500), or (2) it was prepared in anticipation of arbitration or litigation (FMPRIV_00429-00430, 00432-00433, 00435-00436, 00441-00449, 00501-00506).  Therefore, if Fluidmaster ultimately is able to make the required preliminary showing, Plaintiff's speculation regarding routine business reports will not suffice to carry their burden to counter that showing.  *See DP Pham*, 200 Cal. Rptr. 3d at 946 (noting that, after the preliminary showing is made, "'the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply'") (quoting *Costco*, 219 P.3d at 741).

Next, Plaintiffs argue that Fluidmaster's privilege log also is deficient with respect to the application of the work product doctrine.  Specifically, Plaintiffs contend that the log does not show the relevant documents were created in anticipation of litigation.  Fluidmaster did not

address this argument in its reply brief. Instead, the Court is left with Fluidmaster's conclusory assertions in its initial brief that the documents were prepared "to assist with litigation strategy for existing and potential litigation and arbitration." [ECF No. 328], at 13. This statement is not borne out by every entry in the privilege log. For instance, two entries only state, "Information prepared by counsel: re Aggregate data relating to product liability claims." [ECF No. 328-18], at 4, entries FMPRIV_00437-00438. Other entries make similar references to the role of counsel, but fail to indicate that the documents were prepared in anticipation of litigation or arbitration.

"[A] privilege log must identify a specific explanation of why [a document] is privileged." *Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*, 257 F.R.D. 456, 460 (N.D. Ill. 2008). This explanation "must be sufficiently detailed to allow the court to determine whether the discovery opponent has discharged its burden . . . . Accordingly, descriptions such as 'letter re claim,' 'analysis of claim,' or 'report in anticipation of litigation'—with which we have grown all too familiar—will be insufficient." *Allen v. Chicago Transit Auth.*, 198 F.R.D. 495, 498 (N.D. Ill. 2001) (quoting *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992)). Fluidmaster's privilege log does not meet these standards with respect to the work product doctrine. Again, unless Fluidmaster can address these deficiencies, the documents must be produced to Plaintiffs.

Finally, Plaintiffs argue that Fluidmaster has waived both the attorney-client privilege and the work product doctrine, with respect to the third category of documents by injecting the notion of "failure rate" into this case. The attorney-client privilege may be waived when the party asserting the privilege puts an "otherwise privileged communication 'directly at issue and that disclosure is essential for a fair adjudication of the action.'" *Titmas v. Superior Court*, 104

Cal. Rptr. 2d 803, 809 (Cal. Ct. App. 2001), *as modified* (Mar. 26, 2001) (quoting *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal. App. 4th 110, 128 (Cal. Ct. App. 1997)). Privileged communications, however, do not become discoverable simply because they relate to an issue in the litigation. *Luna Gaming--San Diego LLC v. Dorsey & Whitney, LLP*, 2010 WL 148713, at *1 (S.D. Cal. Jan. 11, 2010). "[T]here is no waiver of the attorney-client privilege 'where the substance of the protected communication is not itself tendered in issue, but instead simply represents one of several forms of indirect evidence in the matter.'" *Id.* (quoting *Mitchell*, 691 P.2d 642). "At-issue waiver can also apply to the protection afforded under the work-product doctrine." *Abbott Labs.*, 200 F.R.D. at 410 (quoting *Pyramid Controls*, 176 F.R.D. at 276). Neither party in this case contends that the at issue waiver standard is meaningfully different with respect to the work product doctrine. *Cf. Pyramid Controls*, 176 F.R.D. at 276 ("In this case, Pyramid has waived protection under the work-product doctrine to the same extent that it has waived its attorney-client privilege by putting at issue the discussions between itself and its attorney and the advice Pyramid received based on these discussions.").

Most of Plaintiffs' attention when arguing that there has been an at-issue waiver is devoted to showing that "failure rate" is at the heart of this case. [ECF No. 343], at 4-6. Even if the Court were to accept this premise, though, Plaintiffs still would not prevail. The fact that the concept of "failure rate" has been put at issue does not necessarily mean that every (or any) *communication* discussing failure rate also has been put "directly at issue." *Titmas*, 104 Cal. Rptr. 2d at 809. Moreover, Fluidmaster contends that the failure rate is easily calculated by dividing "claims filed" by "total products sold." [ECF No. 342], at 3. Fluidmaster represents that it has provided verified discovery responses with the data necessary for Plaintiffs to perform this calculation on their own. [ECF No. 350], at 3-4. Plaintiffs have not provided any specific

explanation of why that is not the case.  Instead, Plaintiffs assert that the documents are necessary to test "the veracity of Fluidmaster's purported 'failure rate,' including any manipulation of data relevant to this calculation."  [ECF No. 343], at 6.

The mere desire to test the veracity of a discovery response is an insufficient justification to burst through the attorney-client privilege, if it is applicable here, when there is no indication that the response is false or questionable.  There also is no information in the record at this juncture as to whether additional, non-privileged information, whether already produced or not yet provided, would not be sufficient to clear up any issues with the failure rate about which Plaintiffs may have legitimate concerns.  Plaintiffs also have not identified any evidence indicating that Fluidmaster has manipulated the data it has provided, and speculation is not sufficient to show that disclosure is "essential for a fair adjudication."  *Titmas*, 104 Cal. Rptr. 2d at 809.

In a related argument, Plaintiffs contend that if Fluidmaster will not produce data that supports its failure rate argument, then it should be prevented from "peddling [its] purported failure rate to the jury."  [ECF No. 343], at 4.  This is a different argument, almost in the nature of a motion *in limine*.  On the record before it now, the Court cannot determine whether or not Plaintiffs have enough information from other sources to counter Fluidmaster's contention as to the failure rate of its products.  For countless reasons, it is premature now to address whether Fluidmaster should be precluded from introducing evidence before the jury about its product failure rate.  The only motion now before the Court is Fluidmaster's motion for a protective order concerning the application of the attorney-client privilege and work product doctrine.  The issue of whether Fluidmaster should be precluded from making an argument at trial because it has refused to produce documents Plaintiffs need to refute that argument, or because by raising

such an argument Fluidmaster has waived any privilege that otherwise would attach to those documents, is not before the Court at this time.

For all of these reasons, Fluidmaster's Motion for Protective Order will remain under advisement with respect to Fluidmaster's assertions that all of these documents are protected by the attorney-client privilege and/or the work product doctrine. Fluidmaster will have an opportunity to clear up the deficiencies with its privilege log as discussed above. Depending upon the outcome of that process, the Court will enter an appropriate order or orders finally disposing of the Motion for Protective Order concerning these documents.

**D.     Communications with (FMPRIV_00130, 00173-00174, 00243, 00259), Emails Prepared by or for (FMPRIV_00085-00089, 00183, 00191-00192, 00237-00238, 00245), and Reports Prepared by (FMPRIV_00042, 00044-00047, 00128, 00130) Fluidmaster's Attorneys**

The last three categories of documents that Fluidmaster claims as privileged relate to each other. The fourth category consists of communications between Fluidmaster's employees and Michael Carroll, an attorney. [ECF No. 328], at 3-4, entries FMPRIV_00130, 00173-00174, 00243, 00259. The fifth category is composed of emails prepared for or by Fluidmaster's attorneys, including Carroll, regarding claims lists, data, or analysis. *Id.* at 2-4, entries FMPRIV_00085-00089, 00183, 00191-00192, 00237-00238, 00245. The sixth category is comprised of reports prepared for counsel, including Carroll, discussing strategies for handling connector claims. *Id.* at 2-3, entries FMPRIV_00042, 00044-00047, 00128, 00130. Fluidmaster contends that almost all of these documents are protected by the attorney-client privilege and that at least some—it is all in the case of the last category—are protected by the work product doctrine.

The Court first will address the application of the attorney-client privilege. Because Plaintiffs' arguments regarding the application of the attorney-client privilege do not vary with

respect to each category of documents, the Court will address Fluidmaster's threshold showing with respect to each category and then consider Plaintiffs' arguments.

The fourth category of documents is comprised of emails and spreadsheets sent by Morgan, a Fluidmaster employee, to, among others, Michael Carroll or Barbara Gotthelf, both of whom are attorneys, that either provide information requested by counsel related to products subject to claims or settlements (FMPRIV_00130, 00173-00174) or request legal advice and analysis (FMPRIV_00243, 00259). Carroll is an attorney and a managing partner at Carroll & Carroll, P.C., and describes himself as Fluidmaster's outside general counsel (more on this last point later). [ECF No. 328-1], ¶ 1. Carroll serves Fluidmaster "in a variety of legal capacities including, providing legal advice regarding mergers and acquisitions, corporate governance, the importing and exporting of [Fluidmaster's] products; analyzing regulations that could affect Fluidmaster's lines of business; drafting and negotiating licensing agreements; overseeing the handling of Fluidmaster's trademarks and patents; overseeing litigation; and analyzing the merits of various products liability claims and legal strategy for handling such claims." *Id.* ¶ 3. Gotthelf is one of Fluidmaster's outside litigation counsel and works at the McCarter & English law firm. [ECF No. 328], at 3. If communications with Carroll are protected by the attorney-client privilege, which the Court finds they are for the reasons discussed below, then Fluidmaster has made the required preliminary showing that these documents are covered by the attorney-client privilege.

The fifth category consists of a few different types of documents. There are six emails sent to Carroll, and others, by Morgan that discuss or request legal advice. [ECF No. 328-18], at 2-3, entries FMPRIV_00085-00088, 00183, 00191. Next, there is a spreadsheet sent to Carroll and a Fluidmaster employee by Morgan that reflects legal advice. *Id.* at 3, entry

FMPRIV_00192. And there is a spreadsheet, prepared at the request of counsel, that discusses "strategy and inspection of various Stutman claims" and was sent to Carroll by Morgan. *Id.* at 4, entry FMPRIV_00245. Again, assuming Carroll is within Fluidmaster's attorney-client privilege, then Fluidmaster has made the required preliminary showing as to the attorney-client privilege with respect to these documents.

There are three documents in the fifth category, though, that the Court cannot determine are covered by the attorney-client privilege. FMPRIV_00089 describes a report that discusses legal advice. *Id.* at 3. But that entry does not list any attorney in the "From," "To," "CC," or "BCC" columns. Instead, it lists Ernest Weiss, who is one of Fluidmaster's attorneys, in a column titled "Legal Personnel in Communication." *Id.* The Court cannot determine from this information what involvement Weiss had in the communication, the context in which he is referenced, who created the document, or to whom it was distributed. Similarly, FMPRIV_00237 and FMPRIV_00238 describe an email requesting legal advice and a spreadsheet prepared at the request of counsel, respectively, but do not list any attorney in the four traditional columns. *Id.* Instead, each entry lists Carroll in the "Legal Personnel in Communication" column.[6] Again, the Court does not know what that means. Therefore, Fluidmaster has not made the required preliminary showing with respect to these three documents.

The sixth category of documents includes five reports prepared at the request of Fluidmaster's attorneys that were sent to Carroll and another Fluidmaster employee by Morgan. *Id.* at 2, entries FMPRIV_00042, 00044-00047. Each report appears to discuss the strategy for settlement of a connector claim and each includes a request for settlement authority. *Id.* For

---

[6] The description of entry FMPRIV_00237 also includes the phrase "from Michael Carroll," but it is unclear whether the document itself is from Carroll or the legal advice discussed in the document is from Carroll.

four of these reports, additional people also are listed in the column titled "Legal Personnel in Communication." *Id.* Fluidmaster's privilege log does not list any of these five reports as protected by the attorney-client privilege.[7] The next document in the sixth category is an email sent to Carroll and another Fluidmaster employee by Morgan that provided an update on settlement activity described as having been prepared in anticipation of arbitration or litigation. *Id.* at 3, entry FMPRIV_00128. The last document in this category is an email sent to Carroll by Morgan that contains information gathered at the request of counsel regarding a draft proposal and claim statistics for settlement. *Id.*, entry FMPRIV_00130. These facts are sufficient to make the required preliminary showing with respect to FMPRIV_00128 and 00130 with the same caveat as to Carroll being within the attorney-client privilege.

Plaintiffs do not advance arguments that address specifically many of the documents in the fourth, fifth, and sixth categories. Instead, they provide several reasons as to why they contend communications with Carroll are not subject to the attorney-client privilege at all.

First, Plaintiffs argue that communications with Carroll should be subject to heightened scrutiny because Carroll is Fluidmaster's in-house counsel. In their brief, Plaintiffs initially claim that Carroll's relationship with Fluidmaster is "unclear." [ECF No. 343], at 6. Within the same paragraph, though, Plaintiffs also say unequivocally that Carroll serves as Fluidmaster's in-house counsel. *Id.* ("Other than Mr. Carroll, Fluidmaster does not have a legal department. As such, Mr. Carroll serves as in-house counsel to Fluidmaster."). So, Plaintiffs' position apparently is that Carroll is Fluidmaster's in-house counsel while Fluidmaster maintains that he is outside counsel.

---

[7] Fluidmaster asserts in its opening brief that "[r]eports discussing strategy for connector claims are protected by the attorney-client privilege when prepared for Fluidmaster's counsel." [ECF No. 328], at 14. This description would seem to encompass the five reports. Because the attorney-client privilege is not listed on the privilege log, however, the Court will not consider its application to these documents.

Plaintiffs offer a number of explanations for their contention that Carroll should not be included within the umbrella of Fluidmaster's attorney-client privilege. The first is that Fluidmaster has used both terms (in-house and outside counsel) at various times to refer to Carroll. But Fluidmaster has explained that its description of Carroll as in-house counsel on its early privilege logs was "inadvertent[]." [ECF No. 350-1], ¶ 3. The error on the log was corrected after Plaintiffs pointed it out. *Id.* ¶¶ 4-5. The second and third bases are that Carroll has a "fluidmaster.com" email address and that Fluidmaster has no other legal department. Both of these points do little to show that Carroll formally is Fluidmaster's in-house counsel despite his contention that he is not.

Regardless, though, it does not matter whether Carroll is in-house counsel or outside counsel. The case that Plaintiffs cite in support of their assertion that in-house counsel are subject to heightened scrutiny does not apply California law. *Oracle Am., Inc. v. Google Inc.*, 2011 WL 5024457, at *7 (N.D. Cal. Oct. 20, 2011). The Court has not found any case applying California law that subjected in-house counsel to heightened scrutiny. Instead, it is clear that "communications between a business entity and its in-house counsel acting in a legal capacity" are protected. *Bank of Am., N.A. v. Superior Court of Orange Cty.*, 151 Cal. Rptr. 3d 526, 543 (Cal. Ct. App. 2013). Further, "there are no exceptions to" California's attorney-client privilege "unless expressly provided by statute." *Chubb & Son v. Superior Court*, 176 Cal. Rptr. 3d 389, 396 (Cal. Ct. App. 2014). And no heightened scrutiny exception exists in California's statutory regime.

The Court recognizes that determining the dominant purpose of an in-house counsel's relationship with a corporate entity may be more difficult and sometimes may be situational. That may be Plaintiffs' real point. When faced with similar difficulties, though, courts have

continued to apply the same legal standard that governs every application of the attorney-client privilege under California law. *See McAdam*, 15 F. Supp. 3d at 1014 ("Sometimes it is difficult to determine whether the attorney-client privilege attaches to a communication, particularly if there was ostensibly more than one purpose for the correspondence."); *Ivy Hotel San Diego*, 2011 WL 4914941, at *5 ("The intermingling of roles does not relieve the Court of the requirement that it determine the dominant purpose of the relationship in order to decide whether the attorney-client privilege applies.").

Second, Plaintiffs' argue that Carroll played primarily a business role because he (1) had monetary authority to settle cases and (2) did claims adjusting work. Neither of these arguments gets Plaintiffs to where they want to go on the present record.

Carroll has submitted a declaration stating that he does not have "any monetary authority to settle product liability claims for Fluidmaster." [ECF No. 328-1], ¶ 4. Morgan also submitted a declaration saying the same thing. [ECF No. 328-2], ¶¶ 1, 10. Plaintiffs attempt to rebut these unambiguous, sworn statements first by citing three privilege log entries describing documents as "settlement authority request[s] for connector claim sent to Michael C. Carroll . . . for approval." [ECF No. 328-18], at 2, entries FMPRIV_00042, 00044, 00047. The document descriptions in these three entries are not models of clarity. They could be read as Plaintiffs suggest or they could be read to mean that Carroll was somewhere in the loop or a conduit with respect to obtaining settlement authority for a claim.

Plaintiffs also attempt to show that Carroll had monetary settlement authority by noting that Carroll has attended settlement conferences with this Court. Relying on this Court's standing order regarding settlements, Plaintiffs contend that his attendance means he must have monetary authority to settle. But the Court's standing order for settlement conferences explicitly

allows a corporation to send to a settlement conference someone to whom the corporation has given "full settlement authority" as defined in that standing order. Standing Order for Settlement Conference, at 4, *available at* http://www.ilnd.uscourts.gov/_assets/_documents/ _forms/_judges/gilbert/StandingOrderSettlementConferences.pdf. This does not mean that the representative must be the final decision-maker. Instead, it only means that the final decision-maker, whoever that is, must have given the representative "the authority to negotiate and agree to a binding settlement agreement at any level up to the settlement demand of the opposing party." *Id.* A corporation could give its lawyer full settlement authority within the meaning of the standing order without divesting that person of his role as the corporation's lawyer or opening up all of its communications with the lawyer about settlement to the other side.

Again, however, it does not really matter. Plaintiffs have not rebutted the unambiguous statements in Fluidmaster's declarations that Carroll does not have claim-specific settlement authority. Perhaps that is a subject as to which Plaintiffs have directed other discovery requests. In the Court's view, however, whatever settlement authority Carroll had or did not have is not dispositive here as to the role he played for Fluidmaster with respect to the documents listed on Fluidmaster's privilege log. Plaintiffs would have to do more to show that Carroll was not acting in a legal capacity in connection with discussions involving the settlement of claims than they have done so far. Plaintiffs suggest that the Court should order Fluidmaster to submit these documents for *in camera* review to resolve this issue. But even assuming Carroll played a role somewhere along the continuum with respect to settlement of certain claims, that would not definitively show that communications with him about settlement are not covered by the attorney-client privilege. Other factors would bear on that issue and there are no facts in the

present record that undercut Fluidmaster's preliminary showing that the communications are protected.

Plaintiffs also argue that Carroll had a predominately business relationship with Fluidmaster because he was acting as a claims adjuster. Fluidmaster has submitted declarations from Carroll and Morgan stating that Carroll is "not routinely involved in claims handling" and that Fluidmaster employees "occasionally . . . consult [Carroll] for legal advice regarding claims." [ECF No. 328-1], ¶ 4; [ECF No. 328-2], ¶ 10. Plaintiffs' only response to this is that Carroll and Morgan appear on a lot of communications together, meaning that Carroll must be engaging in claims adjusting because Morgan himself is the Senior Manager of the department that processes product liability claims. This does not prove what Plaintiffs say it does; the mere fact of communication with someone who was doing claims adjustment work does not mean that Carroll was doing claims adjusting work. Instead, the relevant entries on the privilege log for the purposes of the present motion demonstrate that most of the communications between Carroll and Morgan involved strategic discussions, and providing legal advice or documents requested by counsel. [ECF No. 328-18], at 2-3, entries FMPRIV_00042-00000047, 00085-00088, 00128, 00130, 00183, 00191-00192. Therefore, the Court is not convinced that there is any evidence in the record indicating that Carroll performed pure claims adjusting work for Fluidmaster.

Assuming that some such evidence does exist, however, that would not necessarily make a difference. "[W]hen an insurer hires an attorney both to provide a legal opinion and to serve as a claims adjuster, 'the court [still] must make a determination of which purpose was primary.'" *McAdam*, 15 F. Supp. 3d at 1015 (quoting *Ivy Hotel San Diego*, 2011 WL 4914941, at *4). Even where there are facts suggesting that an attorney performed some claims adjusting functions— which the Court is not saying is the case here—courts have accepted a party's representations

accompanied by declarations from a claims adjuster and the attorney as sufficient to establish the dominant purpose of the relationship. *See, e.g.*, *Ivy Hotel San Diego*, 2011 WL 4914941, at *5. On the current record in this case, the Court finds that the dominant purpose of Carroll's relationship with Fluidmaster was attorney-client.

Third, Plaintiffs express concern that Fluidmaster was copying Carroll on communications to allow it to assert the attorney-client privilege in instances where the privilege would not otherwise apply. That is not the impression the Court gets from reviewing these document entries assuming the document descriptions are accurate. Plaintiffs' suspicions do not rise to the level of concrete facts that would justify the wholesale *in camera* review of all communications between Carroll and Fluidmaster employees about the settlement of claims which is ultimately what Plaintiffs want to accomplish here. Further, as one court sitting in California has noted, given the scope of the California attorney client privilege, such concerns may be "a matter for legislative amendment." *PNC Equip. Fin., LLC v. California Fairs Fin. Auth.*, 2012 WL 2505034, at *2 (E.D. Cal. June 28, 2012) ("Although defendant raises concerns about insulating information from discovery merely by cc'ing in-house counsel, that is a matter for legislative amendment."). As stated above, however, that does not appear to be what is happening with respect to the documents Plaintiffs are seeking that are listed on Fluidmaster's privilege log.

For all of these reasons, Plaintiffs have not rebutted Fluidmaster's preliminary showing that communications with Carroll listed on Fluidmaster's privilege log are covered by the attorney-client privilege.

That leaves the work product doctrine. Fluidmaster argues that "some" of the communications involving Carroll are protected by the work product doctrine. [ECF No. 328],

at 10.  The only specific document to which Fluidmaster points the Court is FMPRIV_00130, so that is the only one that the Court will address.  Fluidmaster argues that this document was prepared in anticipation of litigation because counsel was involved, there was little chance to settle the relevant claim at the time, and the filing of a lawsuit or arbitration was imminent.  *Id.* The relevant privilege log entry describes the email as: "Information gathered at the request of counsel re: draft proposal and claim statistics for settlement."  [ECF No. 328-18], at 3, entry FMPRIV_00130.  If that is in fact the context under which this document was created, then it is covered by the work product doctrine.  On the present record, Plaintiffs do not provide enough information to rebut that showing.

Fluidmaster also identifies six documents from the fifth category as protected by the work product doctrine.  [ECF No. 328], at 14.  FMPRIV_00192 is described as a spreadsheet "reflecting legal advice re: Stutman claims analysis for pending case," which is sufficient to merit work product protection assuming the veracity of the description of the document.  [ECF No. 328-18], at 3.  The descriptions of the other documents are sufficient in the same vein. FMPRIV_00086 describes an email discussing legal advice regarding "specific claims subject to arbitration."  *Id.* at 2.  Various documents labeled from FMPRIV_00183 to FMPRIV_00245 are described as containing legal advice about claims, claims analysis (some for pending case or cases), settlement projections and strategy, analysis of claims data, and the like.  As a threshold matter, these descriptions are sufficient to bring the documents within an applicable privilege. To the extent Plaintiffs address any of these documents other than in connection with their argument that communications with Carroll are not protected, they do not raise any argument that would merit further discussion of these documents.

Finally, Fluidmaster argues that all of the documents in the sixth category are protected by the work product doctrine.  For the reasons already explained above, FMPRIV_00130 is protected by the work product doctrine.  FMPRIV_00042, and 00044-00047 all describe reports prepared at the request of counsel that discuss the "strategy for connector claim and settlement authority request for connector claim."  [ECF No. 328-18], at 2.  FMPRIV_00128 states that it is an update on settlement activity prepared in anticipation of arbitration or litigation.  *Id.* Although Fluidmaster's descriptions of these withheld documents are not models of clarity, the Court is satisfied that Fluidmaster has done enough to show that these documents are protected by the work product doctrine.  The fact that the communications occurred in the context of "settlement" of connector claims and an "update on settlement activity prepared in anticipation of arbitration or litigation" is sufficient particularly given the arguments Plaintiffs raise in opposition to Fluidmaster's assertions here.

Plaintiffs raise a few more arguments with respect to the work product doctrine that the Court also does not find persuasive.

First, Plaintiffs note that Fluidmaster's privilege log fails to identify the critical factors that make the documents in anticipation of litigation.  The Court addressed similar arguments with respect to documents in the fifth category above and found them not to have merit.

Second, Plaintiffs argue that Fluidmaster has failed to distinguish routine business documents from documents properly protected by the attorney-client privilege or the work product doctrine.  In support of this contention, Plaintiffs cite two privilege log entries.  The first is for a document "prepared at the request of counsel re: strategy and inspection of various Stutman claims."  *Id.* at 4, entry FMPRIV_00245.  There is nothing to indicate that this is a routine business document and Plaintiffs do not provide any explanation for their conclusion that

34

it is one.  The other document that Plaintiffs cite is described as "Document prepared in anticipation of arbitration or litigation re: update on settlement activity."  *Id.* at 3, entry FMPRIV_00128.  Plaintiffs' only reason for thinking that this is a business document is that Fluidmaster's Chief Financial Officer was one of the recipients of the document.  That is a inadequate basis for such a conclusion.

Third, Plaintiffs argue that, because Fluidmaster is self-insured, many of the withheld documents cannot be protected by the attorney-client privilege or the work product doctrine. According to Plaintiffs, "claims adjudication . . . is part of the normal course of its business as a self-insured entity."  [ECF No. 343], at 9.  The cases cited by Plaintiffs establish that (1) routine claims investigations typically are not protected by the work product doctrine when prepared by a self-insured company, and (2) the mere filing of a claim with a self-insured company does not establish anticipation of arbitration or litigation.  These points are of little relevance to Fluidmaster's motion.  Based on the privilege log descriptions, none of the relevant documents are routine claims investigation reports.  And Fluidmaster is not arguing that the mere filing of a claim is sufficient to trigger the work product protection.  Instead, Fluidmaster contends in its briefs that there are critical factors—which, as the above discussion illustrates, are sometimes missing from their privilege log—that show the documents were prepared in anticipation of arbitration or litigation.  Therefore, Plaintiffs' cases are of little use with respect to the specific issues matters raised in this case.

Therefore, for the reasons discussed in this section above, Fluidmaster's motion is granted with respect to all of the documents discussed in this section, as to the attorney-client privilege and work product doctrine, except as to whether the attorney-client privilege protects FMPRIV_00089, 00237, and 00238.  In accordance with the process described earlier in this

Memorandum Opinion and Order, Fluidmaster has until November 22, 2016, to supplement its privilege log in an attempt to cure any or all of the noted deficiencies or, if it wants to do so, to submit documents for *in camera* review. If Fluidmaster cannot cure the noted deficiencies, however, its motion will be denied as to these documents and it must produce these documents to Plaintiffs as well.

Fluidmaster also shall file on or before November 22, 2016, a report summarizing what, if any, additional information it has added to its privilege log with respect to the deficiencies noted in this Memorandum Opinion and Order; identifying any documents it has submitted for *in camera* review; and providing any additional information it believes would help the Court and Plaintiffs evaluate the claims of privilege that remain pending. At the hearing set for November 30, 2016, the Court will address next steps designed to dispose finally of any remaining attorney-client privilege or work product issues, including, as necessary, a date for Fluidmaster to produce any documents that remain under advisement for the reasons discussed in this Memorandum Opinion and Order.

### III. CONCLUSION

For the reasons stated above, Defendant's Motion for Protective Order Preventing Disclosure of Its Attorney-Client Privileged and/or Protected Work Product Documents [ECF No. 328] is granted in part and remains under advisement in part.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: November 8, 2016